**Timothy R. CHAMBERLAIN, M.D., et al., Appellants (Defendants below),**

v.

**Richard Steven WALPOLE, Appellee (Plaintiff below).**

No. 02S04–0403–CV–143.

Supreme Court of Indiana.

Feb. 24, 2005.

Milford M. Miller, Calvert S. Miller, Diana C. Bauer, Fort Wayne, IN, Attorneys for Appellants.

Eric D. Johnson, Indianapolis, IN, Amicus Curiae Indiana State Medical Association; National Association of Independent Insurers, and The Insurance Institute of Indiana.

Peter H. Pogue, Donald B. Kite, Sr., Carmel, IN, James D. Johnson, Evansville, IN, Amicus Curiae Defense Trial Counsel of Indiana.

Phillip W. Ogden, Timothy A. Ogden, Warsaw, IN, Attorneys for Appellee.

Mark A. Scott, Kokomo, IN, Amicus Curiae The Indiana Trial Lawyers Association.

BOEHM, Justice.

We hold that the Medical Malpractice Act does not provide a cause of action for damages for a wrongful death where the Wrongful Death Act does not allow such an action.

**Factual and Procedural Background**

Richard Walpole's father died following surgery for a hernia repair. Walpole filed a proposed medical malpractice complaint with the Indiana Department of Insurance, seeking recovery from six physicians and

two hospitals for funeral and burial expenses, "lost love, care, affection, society, companionship, and services of his father," and "extreme mental anguish." Three of the physicians filed a motion for preliminary determination under the Medical Malpractice Act, arguing that the Wrongful Death Act precluded recovery for the loss of Walpole's father's love, care, and affection. The remaining defendants later joined that motion. The trial court denied the motion and certified the order for interlocutory appeal. The Court of Appeals affirmed with Judge Baker dissenting. *Chamberlain v. Walpole,* 796 N.E.2d 818, 819 (Ind.Ct.App.2003). This Court granted transfer. *Chamberlain v. Walpole,* 812 N.E.2d 800 (Ind.2004).

### Walpole's Right to Non-pecuniary Damages

■ Walpole argues that although he cannot recover non-pecuniary damages for his father's death under the Wrongful Death Act (WDA), the Medical Malpractice Act (MMA) allows him to do so. All parties agree that this appeal turns on the interpretation of these two acts. This presents a question of law that we review de novo.

■ No cause of action for wrongful death existed at common law. *South v. White River Farm Bureau Coop.,* 639 N.E.2d 671, 673 (Ind.Ct.App.1994). An action for wrongful death is therefore purely statutory and is strictly construed. *Durham v. U–Haul Int'l,* 745 N.E.2d 755, 759 (Ind.2001). The WDA permits claims for wrongful death and authorizes suits by a personal representative of a decedent for death caused by the "wrongful act or omission of another." Ind.Code § 34–23–1–1 (2004). If the decedent had no surviving "widow, widower, or dependent children, or dependent next of kin" the statute limits its damages to "hospitalization or hospital service, medical and surgical services, such

funeral expenses, and such costs and expenses of administration, including attorney fees." *Id.* Walpole concedes that, as a non-dependent adult he is not entitled to recover damages for non-pecuniary loss under the WDA. *See Necessary v. Inter-State Towing,* 697 N.E.2d 73, 76 (Ind.Ct. App.1998); *Ed Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909, 911 (Ind.Ct.App. 1994). He asserts, however, that the MMA creates a claim independent of the WDA.

■ The MMA defines "malpractice" as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 34–18–2–18. The statute provides the procedure to assert such a claim. *Cacdac v. West,* 705 N.E.2d 506, 510 (Ind.Ct.App.1999). The MMA does not by its terms create an express cause of action for wrongful death. However, the MMA includes the following definition:

> "Patient" means an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

I.C. § 34–18–2–22.

Walpole argues that because he was the decedent's "child" and "representative" he is a "patient" as defined by the MMA, and therefore can assert a "derivative claim." He reasons that because the MMA identifies derivative claims as "including claims

for loss of services, loss of consortium, expenses, and other similar claims" he should be able to pursue a claim for loss of his father's love, care, and affection under that statute. The defendants, all health care providers under the MMA, respond that the MMA imposes unique procedures on claims for medical malpractice but does not create causes of action that otherwise do not exist. The issue is therefore whether the MMA expanded the types of damages a non-dependent child may recover when a parent dies of medical malpractice. The defendants argue that it would be inconsistent for an adult non-dependent child to be barred from recovering damages for non-pecuniary loss under the WDA, yet be permitted to recover such damages under the MMA. That result, they contend, is contrary to the purposes of the MMA and is not required by its language.

Walpole contends that *Community Hospital of Anderson and Madison County v. McKnight*, 493 N.E.2d 775 (Ind.1986), and *Goleski v. Fritz* 768 N.E.2d 889 (Ind.2002), both support of the view that the MMA creates independent causes of action. In *McKnight*, Donald McKnight died while under the care of the hospital. His wife and son sued for damages with the Indiana Insurance Commissioner and then filed a complaint for damages in trial court. 493 N.E.2d at 776. The hospital pointed out that the WDA requires that a person pursuing a claim involving a death must first be appointed personal representative and argued that because no personal representative had been appointed, Mrs. McKnight and her son could not pursue a wrongful death claim. *Id.* at 777. This Court disagreed, reasoning "the Medical Malpractice Act is plain and unambiguous in designating who qualifies as a representative and in designating those who are eligible to pursue derivate claims." *Id.* We therefore held that the procedure of the MMA ren-

dered the WDA's requirement that a personal representative be appointed unnecessary. *Id.* We concluded that Mrs. McKnight and her son qualified under the MMA to pursue a claim, as a representative or through a patient derivative claim. *Id.*

In *Goleski*, Lawrence Vetter died while in the hospital. 768 N.E.2d at 890. His widow, Dorothy filed a claim with the Department of Insurance seeking damages from the hospital and his physicians for lost "financial support, love, affection, kindness, attention, and companionship" as well as reasonable funeral, burial, and medical expenses but died before the claim review process was completed. *Id.* After Dorothy died, Nadine Goleski, the couple's daughter, was appointed personal representative of Dorothy's estate and filed an amended malpractice claim, contending that Dorothy's claim survived her death and passed to her estate. *Id.* The trial court held that Goleski could not maintain an action under the WDA, the MMA, or the Survival Statute. *Id.* This Court reversed in part, holding that Goleski could not maintain a claim for Lawrence's death under the WDA because that act requires the appointment of a personal representative within two years of the death and no personal representative had been appointed within that time. *Id.* at 890–91. We held, however, that under the Survival Statute Goleski could pursue the claim initially filed by Dorothy under the MMA. This Court reasoned, following *McKnight*, that "under the terms of the Medical Malpractice Act, before Dorothy died she was a 'patient' with 'derivative' claims insofar as she asserted claims for lost financial support, love, affection, kindness, attention, companionship, and reasonable funeral and burial expenses. As the wife of Lawrence, she clearly was a 'relative.' She therefore met the statutory require-

ments to bring these claims as a 'patient' and was entitled to assert 'derivative' claims for these items under the Medical Malpractice Act." *Id.* at 891. The Survival Statute permits a personal representative to pursue a claim of a decedent unless it is a claim for personal injuries to the decedent. I.C. § 34–9–3–1(a)(6). Here, the claim was for personal injury to Lawrence, not to Dorothy. In short, the claim for Lawrence's death, properly asserted by Dorothy before her death, was an asset of Dorothy's estate when she died. As such, it was properly pursued by Goleski as Dorothy's personal representative. *Id.* at 892.

Walpole argues that these two cases require the conclusion that he is a "patient," entitled to pursue a "derivative claim" for the loss of love, care, and affection of his father. We disagree. *McKnight* did not expand the types of claims that could be pursued or hold that the MMA created a new set of claims. *McKnight* merely allowed a claimant to take advantage of the procedures provided in the MMA to pursue a claim directly that could be pursued under the WDA by a personal representative for the claimant's benefit. In *Goleski,* when Lawrence Vetter died, his wife, Dorothy had a recognized claim under the WDA for damages for non-pecuniary losses. Specifically, Dorothy, as a widow, was entitled to, and did, bring a claim for lost financial support, love, affection, kindness, attention, and companionship allowed by the WDA. *McKnight* permitted Dorothy to assert the claim directly rather than as personal representative of Lawrence's estate. After Dorothy died, Goleski could not bring her own claim under the WDA for Lawrence's death because no personal representative had been appointed for Lawrence and the two years for appointing a personal representative for his estate had expired. However, under the Survival Statute, I.C. § 34–9–3–1(a), Goleski could

pursue Dorothy's claim which survived Dorothy's death because it was not a claim for personal injury to Dorothy. Thus *Goleski,* like *McKnight,* did not find the MMA to create any new cause of action. Rather, both cases addressed only the procedure for asserting damage actions otherwise allowed under the WDA, and in *Goleski,* the Survival Statute.

The MMA's definition of a "patient" to include both the person who was injured and a person who has a derivative claim because of that person's injury does not imply that the MMA creates a new claim. It merely requires that claims for medical malpractice that are otherwise recognized under tort law and applicable statutes be pursued through the procedures of the MMA. The MMA's recognition of "derivative" claims is found only in the definition of "patient." The effect of this provision is merely to require that any person who has a "derivative claim" for medical malpractice follow the requirements of the MMA in filing a proposed complaint with the Insurance Commissioner, etc. The MMA's listing of what qualifies as a "derivative claim" is to ensure that the MMA applies to all available claims for medical malpractice. But the MMA does not create new substantive rights or create new causes of action. As the defendants point out, the MMA was designed to curtail liability for medical malpractice, not to expand it. *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 379–80, 404 N.E.2d 585, 589–90 (1980). The language of the definition of patient, as it fits in the statute and as applied in *McKnight* and *Goleski* leads to the conclusion that the MMA is procedural and did not create new causes of action.

In *Breece v. Lugo,* 800 N.E.2d 224 (Ind. Ct.App.2003), a different panel of the Court of Appeals (Judges Ratliff, Robb,

and Vaidik) recently rejected the contention that the MMA created a claim for death of a fetus even though, as recently held in *Bolin v. Wingert,* 764 N.E.2d 201, 203 (Ind.2002), no such claim could be pursed under the Child Wrongful Death Act. I.C. § 34–18–1–1. We agree with the analysis of the *Breece* panel and therefore today deny the pending petition for transfer in that case.

### Conclusion

The decision of the trial court is reversed. This case is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.