**INDIANA PATIENT'S COMPEN-SATION FUND, Appellant–Defendant,**

v.

**Lori WINKLE and Darrin Winkle, Appellees–Plaintiffs.**

No. 49A05–0511–CV–653.

Court of Appeals of Indiana.

March 16, 2007.

Susan E. Cline, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellant.

Mark A. Scott, King & Scott, LLP, Kokomo, IN, Attorneys for Amicus Curiae, The Indiana Trial Lawyers Association.

Deborah K. Pennington, Jerry A. Garau, Findling Garau Germano & Pennington, P.C., Indianapolis, IN, Attorneys for Appellee.

Thomas J. Costakis, Greg A. Small, Krieg DeVault LLP, Indianapolis, IN, Attorneys for Amicus Curiae, The Indiana State Medical Association.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Due to malpractice committed by doctors during her pregnancy, Lori Winkle suffered from malnutrition resulting in a neurological injury. She also lost the child she and her husband, Darrin Winkle, were expecting. Lori and Darrin initiated malpractice proceedings and ultimately settled with certain health care providers for the then-statutory limitation of $100,000. Lori and Darrin subsequently filed an action against the Indiana Patient's Compensation Fund (the "Fund") seeking payment of excess damages. The trial court determined that Lori and Darrin were entitled to three separate maximum statutory excess damage awards—one to Lori for her neurological injury, one to Lori for her emotional distress due to the loss of the child, and one to Darrin for his emotional distress over the loss of the child. The Fund now appeals the trial court's determination that three separate awards were appropriate.

Concluding that Lori and Darrin are not entitled to separate excess damage awards arising from the death of their unborn child, we affirm the trial court's award of one statutory excess damage award to Lori, and reverse the remainder of the trial court's order.

### Facts and Procedural History [1]

Lori and Darrin were married in 1994. In 1998, Lori became pregnant with the couple's first child. Very early in her pregnancy, Lori developed hyperemesis gravidarum, a severe form of pregnancy-related nausea and vomiting.[2] Lori received intravenous hydration and had gall bladder surgery, but she was never given vitamin supplements. Lori's malnutrition and vitamin deficiency caused her to suffer, inter alia, from Wernicke's encephalopathy, a degenerative brain disorder caused by lack of thiamine, and to lose her and Darrin's child at seventeen weeks. Lori continues to suffer from the effects of the Wernicke's encephalopathy and has incurred over $330,000 in medical, hospital, and related expenses.

A medical malpractice action filed by Lori and Darrin was resolved by a Final Release and Settlement Agreement with certain health care providers and their insurers[3] for the statutory damage limitation of $100,000.[4] On April 20, 2005, Lori and Darrin filed the instant action against the Fund, petitioning for payment of excess damages. In an amended petition, Lori and Darrin alleged that they suffered three separate injuries from the single oc-

1. We heard oral argument on this case on July 27, 2006, in the Indiana Supreme Court courtroom in Indianapolis.

2. Hyperemesis gravidarum "is a debilitating and potentially life-threatening pregnancy disease marked by rapid weight loss, malnutrition, and dehydration due to unrelenting nausea and/or vomiting with potential adverse consequences for the newborn(s)." Hyperemesis Education and Research (HER) Foundation, http://www.hyperemesis.org/ (last visited March 9, 2007).

3. The Fund notes in a footnote in its brief that the Agreement names only Lori, individually and as parent and guardian of her deceased child, as the claimant (although both she and Darrin signed the Agreement), and cursorily concludes that Darrin has no standing. See Brief of Appellant at 12 n. 3. We decline to address this statement, as it was not developed as an argument in the brief.

4. The statutory damage limitation applicable to the Winkles' action provided: "A health care provider qualified under this [Act] is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice." The amount was raised to $250,000 in 1999. Ind.Code § 34-18-14-3(b).

currence of malpractice:[5] 1) Lori's malnutrition and vitamin deficiency damages; 2) Lori's emotional distress due to the loss of the child; and 3) Darrin's emotional distress due to the loss of the child. At the conclusion of the damages hearing, the trial court indicated that it would order three separate maximum statutory excess damage awards (or "caps") to Lori and Darrin, less the $100,000 already paid by the healthcare providers pursuant to the settlement.[6] Upon being reminded that the Fund had filed a request for findings of fact, the trial court solicited proposed findings from the parties, and thereafter entered findings of fact and conclusions thereon. The trial court assessed the maximum statutory excess damage award for each of the three injuries alleged by the Winkles and ordered that the Fund pay the Winkles $2,150,000, with interest at the rate of eight percent per annum. The Fund now appeals.

*Discussion and Decision*[7]

### I. Standard of Review

Under Trial Rule 52, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions that rely upon those findings. *Purcell v. Southern Hills Investments, LLC,* 847 N.E.2d 991, 996 (Ind.Ct.App. 2006). In determining whether the findings or judgment are clearly erroneous, we will not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Hill v. Davis,* 832 N.E.2d 544, 548 (Ind.Ct.App.2005).

We are dealing here with the interpretation of the medical malpractice statute. The interpretation of a statute is a question of law. *City of Jasper v. Collignon,* 789 N.E.2d 80, 95 (Ind.Ct.App.2003), *trans. denied.* Although we defer substantially to findings of fact, we do not so defer to conclusions of law. *Purcell,* 847 N.E.2d at 996. We review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *State Auto Ins. Cos. v. Shannon,* 769 N.E.2d 228, 231 (Ind.Ct.App.2002), *trans. denied.*

### II. Are the Winkles Entitled to Three Caps?

The trial court concluded that Darrin was a "patient" for purposes of the Act because "[h]e is a person having a claim of any kind—in this case, a claim for negligent infliction of emotional distress—as a result of alleged malpractice on the part of a health care provider."[8] Appellant's Ap-

---

5. The Winkles and the Fund stipulated that the injuries for which the Winkles sought recovery were the result of a single occurrence of malpractice. Appellant's Appendix at 8.

6. The maximum statutory excess damage award applicable to this action is $750,000. Ind.Code § 34-18-14-3(a)(2).

7. The Indiana State Medical Association has filed an amicus brief aligned with the Fund and the Indiana Trial Lawyers Association

has filed an amicus brief aligned with the Winkles.

8. The Fund disputes the trial court's finding that Darrin was a patient, arguing that it "improperly expands the class of plaintiffs who can recover under the Act by redefining the Act's explicit definition of 'patient' to include individuals such as Darrin, who never received health care and who have only a derivative claim." Brief of Appellant at 6; *see also* Brief of Amicus Curiae, The Indiana

pendix at 10. The trial court also stated that "[t]here is no dispute that [Lori's] malnutrition injury is compensable under the Act," and concluded that her "emotional distress injury resulting from the loss of her unborn child is an injury distinct from the Wernicke's encephalopathy." *Id.* at 10–11. The trial court further concluded that "Darrin's emotional distress claim is also a distinct injury caused by the health care providers' malpractice. Darrin has an independent emotional distress claim because he had direct involvement in the events which caused his emotional distress injury." *Id.* at 11.

No one disputes that Lori is entitled to a cap for the injuries she sustained as a result of the malpractice. Moreover, the Fund concedes that the Winkles may seek emotional distress damages. *See* Brief of Appellant at 18 (Darrin and Lori "may certainly seek emotional damages because they satisfy the direct impact test and the bystander rule."); *see also Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind.1991) (holding that when a plaintiff sustains a direct impact by the negligence of another and sustains emotional trauma as a result thereof, the plaintiff is entitled to maintain an action to recover for that emotional trauma regardless of physical injury); *Groves v. Taylor,* 729 N.E.2d 569, 573 (Ind.2000) (holding that when there is no direct impact, a bystander who actually witnessed or came on the scene soon after the death or severe injury of one with a close relationship to the plaintiff caused by negligent conduct may maintain an action for emotional trauma); *Ryan v. Brown,* 827 N.E.2d 112, 121, 124–25 (Ind.Ct.App. 2005) (holding that both parents who suffer the loss of an unborn child due to

medical malpractice have a claim for negligent infliction of emotional distress). The Fund asserts, however, that "the emotional damages must be recovered under the same statutory damages cap allotted for Lori's injury as a patient because those emotional damages stem from Lori's injury." Brief of Appellant at 13–14.

We do not agree that the emotional damages Darrin and Lori assert stem from Lori's injury. Certainly, there was some emotional distress attendant to Lori's injury, and the cap allotted to her includes compensation for those emotional damages. However, Lori's doctors were treating both her and her unborn child, and both she and her unborn child were injured by their malpractice. It is the emotional distress Lori and Darrin suffered because of the injury to their unborn child for which they are seeking to recover additional caps. In this respect, we agree with the Winkles that the malpractice inflicted two distinct injuries—one to Lori and one to the unborn child.

Recovery of excess damages for "an injury or death of a patient" resulting from "an act of malpractice" occurring after January 1, 1990 is limited to a certain amount:

> The total amount recoverable for *an injury or death of a patient* may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).

Ind.Code § 34–18–14–3(a) (emphasis add-

State Med. Assoc. at 8. The Fund reads the definition of "patient" too narrowly. Darrin, as "a person having a claim of any kind, whether derivative or otherwise," is clearly a

"patient" pursuant to the Act's definition. Whether he is entitled to his own cap is the issue we address in more detail herein.

ed).[9] The Act defines "patient" as follows: "Patient" means *an individual* who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, *and other similar claims.*

Ind.Code § 34–18–2–22 (emphasis added).

A cause of action is derivative if it may be brought only where a separate, related claim is actionable. *Durham v. U–Haul Int'l,* 745 N.E.2d 755, 764 (Ind.2001). The derivative claimant must prove all the elements of the related tort in order to recover. *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1386 (Ind.1995). The Act defines a derivative claim to "include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims." Ind.Code § 34–18–2–22. In *Nelson v. Denkins,* 598 N.E.2d 558, 563 (Ind. Ct.App.1992), we noted that a cause of action for loss of consortium is derivative in nature because it "derives its viability from the validity of the claim of the injured spouse against the wrongdoer." A cause of action is independent if it may be brought irrespective of the merits of an accompanying tort. *City of Anderson v. Weatherford,* 714 N.E.2d 181, 185 (Ind.Ct. App.1999), *trans. denied.*

Loss of consortium, loss of services, loss of love and affection, and other such claims, are purely relational. That is, they inure to the claimant only because of the relationship that exists between the claimant and the injured, be it husband and wife or parent and child. They do not require that the claimant have been involved in or even present during the incident that caused the injury. They are basically an additional element of the damage caused by the incident; hence, they are considered derivative. Negligent infliction of emotional distress, however, is not an element of the damage, but the damage itself. It is a direct, personal, on-the-scene injury. As claims of negligent infliction of emotional distress no longer require an underlying physical injury or even a physical impact, we have held on numerous recent occasions that it is an independent tort. *See Elliott v. Allstate Ins. Co.,* 859 N.E.2d 696, 706 (Ind.Ct.App. 2007), *trans. pending* (acknowledging that negligent infliction of emotional distress is an independent tort and holding that the definition of "bodily injury" in an insurance policy includes both negligent infliction of emotional distress accompanied by physical manifestations as well as negligent infliction of emotional distress "that is susceptible to medical diagnosis and can be proven through medical evidence even when not accompanied by physical manifestations of that distress"); *Clancy v. Goad,* 858 N.E.2d 653, 661–63 (Ind.Ct.App. 2006), *trans. pending* (acknowledging that negligent infliction of emotional distress is an independent tort and holding that husband who had personally witnessed his wife being struck by a truck as they both rode motorcycles was entitled to an in-

---

**9.** Indiana Code section 34–18–14–3 was amended effective July 1, 1999, and now allows recovery of up to $1,250,000 for acts of malpractice occurring after June 30, 1999.

Because the malpractice at issue herein occurred in February 1999, we reference the statute as it was in effect at that time.

struction on the modified impact rule as a potential avenue for his recovery of emotional damages); *State Farm Mut. Auto. Ins. Co. v. Jakupko,* 856 N.E.2d 778, 783 (Ind.Ct.App.2006), *trans. pending* ("a negligent infliction of emotional distress claim is an independent tort not contingent upon proof of a separate, underlying tort"); [10] *see generally Lachenman v. Stice,* 838 N.E.2d 451, 457–61 (Ind.Ct.App.2005), *trans. denied* (analyzing the evolution of Indiana case law on the subject of negligent infliction of emotional distress).

The parties dispute whether emotional distress is "an injury" entitled to a separate recovery from the Fund. We believe that positing the issue in this way places the emphasis on the wrong part of the statute. It is clear, at least in the contract and personal injury contexts, that negligent infliction of emotional distress is "an injury." In this case, however, we are constrained by the language of the Act, and the question we must answer is not simply whether Lori and Darrin have suffered an injury, but whether, with respect to the injury they have suffered because of their unborn child's death,[11] they are "patients" entitled to recovery.

Again, the Act defines a derivative claim as including "the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, *and other similar claims.*" Ind.Code § 34–18–2–22 (emphasis added). Although, as we have held, negligent infliction of emotional distress is an independent tort, we are bound by precedent and the rules of statutory construction to conclude that such a claim, when made under the Act, falls under the Act's definition of "derivative claim." For instance, in interpreting the damages cap in Indiana Code section 34–18–14–3(a), our supreme court held that "only 'injury or death' within the meaning of this section is the injury or death suffered by the *actual victim of the malpractice.*" *Goleski v. Fritz,* 768 N.E.2d 889, 891 n. 1 (Ind.2002) (emphasis added). Given that clear statement of the law, which we discuss further in this opinion, *infra,* we must hold that Lori and Darrin's negligent infliction of emotional

10. As noted by the court in *Jakupko,* there is "somewhat confusing" language in *Ryan, supra,* from which it could be implied that we did not consider negligent infliction of emotional distress to be an independent tort. 856 N.E.2d at 782 n. 2 (citing *Ryan,* 827 N.E.2d at 118). At least two subsequent cases have cited *Ryan* for that proposition. *Doe v. Lafayette Sch. Corp.,* 846 N.E.2d 691, 701 (Ind.Ct. App.2006); *Fitzpatrick v. City of Hobart,* 2006 WL 2736127 at *9 n. 6 (N.D.Ind., Sept. 25, 2006). In *Jakupko,* however, we noted that we did not hold in *Ryan* that negligent infliction of emotional distress is not an independent tort; rather, we "merely discussed the appellees' assertion that negligent infliction of emotional distress claims depended on the success of an underlying negligence claim." 856 N.E.2d at 782 n. 2; *see also Clancy,* 858 N.E.2d at 661 n. 5.

11. In a recent decision involving the modified impact rule for negligent infliction of emotional distress claims, our supreme court recalled the following guideline to be followed when assessing a plaintiff's claim:

[W]hen the courts have been satisfied that the facts of a particular case are such that the alleged mental anguish was not likely speculative, exaggerated, fictitious, or unforeseeable, then the claimant has been allowed to proceed with an emotional distress claim for damages even though the physical impact seems to have been rather tenuous.

*Atl. Coast Airlines v. Cook,* 857 N.E.2d 989, 996 (Ind.2006) (quoting *Bader v. Johnson,* 732 N.E.2d 1212, 1221 (Ind.2000)). No legitimate argument could be made under the facts of this case challenging the Winkles' emotional distress claims as "speculative, exaggerated, fictitious, or unforeseeable."

distress claims constitute "derivative claims" as defined in Indiana Code section 34–18–2–22.[12] As such, there must be a "patient" from whom their claims can derive.[13] Although this court has held that if there is more than one actual victim of the malpractice, each injured person can obtain excess damages, *see McCarty v. Sanders*, 805 N.E.2d 894, 899–900 (Ind.Ct.App. 2004), *trans. denied*, the nature of the injury alleged by the Winkles in light of the Act's definition of a derivative claim limits the recovery here.

A "patient" is defined by the act first and foremost as "an individual." *Id.* In *Bolin v. Wingert*, 764 N.E.2d 201, 207 (Ind.2002), our supreme court determined that the Indiana Child Wrongful Death Statute creates a cause of action only for children who are born alive. *Bolin* was decided in the context of an automobile accident that caused injuries, including a miscarriage, to the plaintiff. The Child Wrongful Death Statute provides that "[a]n action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child." Ind.Code § 34–23–2–1(b).[14] "Child" was defined as "an unmarried individual without dependents who is less than twenty (20) years of age; or less than twenty-three (23) years of age and is enrolled in an institution of higher education or in a vocational school or program." Ind.Code § 34–23–2–1(a). In determining the lower limit on the definition of "child," the court noted that the legislature's definition included four key concepts: "an (1)

unmarried, (2) individual, (3) without dependents, (4) who is less than twenty years of age." 764 N.E.2d at 206.

The first three concepts tend to indicate the legislature contemplated that only living children would fall within the definition of "child." "Unmarried" and "without dependents" involve activities in which only living persons can engage.
\* \* \*

The words chosen by the legislature to define "child" have accepted public meanings that point in a similar direction. Black's Law Dictionary defines "individual" as "[e]xisting as an indivisible entity." Webster's Dictionary says among other things that an "individual" is a being "referred to by a proper name." This is language human beings use to describe other independently living human beings.

*Id.* (citations omitted).

Applying a similar analysis to the definition of "patient" in the Act as the *Bolin* court did to the definition of "child" in the Child Wrongful Death Statute, and mindful of the *Bolin* decision in general, we conclude that a "patient," defined as it is in the Act as "an individual," must be a living person. Even though the unborn child is often the focus of medical care, that alone does not meet the statutory definition of a "patient." Lori and Darrin are not entitled to additional caps for their negligent infliction of emotional distress claims because their unborn child is not a "patient"

---

**12.** This conclusion is further supported by our consistent interpretation of the Act's provisions as having been designed to curtail liability for medical malpractice, not expand it. *See Chamberlain v. Walpole*, 822 N.E.2d 959, 963 (Ind.2005).

**13.** Neither Lori nor Darrin has alleged that they received or should have received health care because of their emotional distress, and

thus, for purposes of determining whether they are entitled to a separate cap arising from the death of their unborn child, they are not "patients" themselves.

**14.** When *Bolin* was decided, this section was found at Indiana Code section 34–1–1–8. It was recodified in 1998, but has not changed in any substantive aspect.

from whom their claims can derive. Rather, as stated by the *Bolin* court and later by this court in *Ryan,* Indiana has an expansive view of the damages that those impacted by a miscarriage—either directly, in the case of the mother, or as a bystander, in the case of some fathers—can pursue. *Bolin,* 764 N.E.2d at 207 (the "exclusion of unborn children from Indiana's Child Wrongful Death Statute does not mean that negligently injured expectant mothers have no recourse[;]" because plaintiff also sought compensation for her own pain and suffering, she could claim damages to compensate her for the miscarriage); *Ryan,* 827 N.E.2d at 121. In their negligent infliction of emotional distress claims, Lori and Darrin may recover all emotional damages that were suffered as a result of the miscarriage; however, those emotional damages must be recovered under the single statutory cap allotted to Lori. We acknowledge that this is a harsh result, especially inasmuch as it, in addition to our previous jurisprudence regarding negligence leading to the death of an unborn child, means there is no cause of action and no independent avenue of recovery available for the legitimate damages incurred in the loss of an unborn child, neither on the parents' behalf nor on the child's. In the medical malpractice context, however, it is the balance the legislature struck in acting to protect healthcare providers from malpractice claims and preserve the availability of health care services for our communities.

*See Poehlman v. Feferman,* 717 N.E.2d 578, 582 (Ind.1999).

Moreover, we believe this result is in line with existing precedent regarding the Act and the statutory cap. In *Breece v. Lugo,* 800 N.E.2d 224, 228 (Ind.Ct.App. 2003), *trans. denied,* this court determined that the Act does not create an independent cause of action for wrongful death of a fetus.[15] We "particularly emphasize[d]" that the Act "neither created a new class of plaintiffs nor enlarged the scope of damages that can be sought against healthcare providers." *Id.* at 228–29.

In *Indiana Patient's Comp. Fund v. Wolfe,* 735 N.E.2d 1187 (Ind.Ct.App.2000), *trans. denied,* this court considered the question of who falls under the Act's definition of a "patient" for excess damages purposes. In that case, the Wolfes' child was born with the umbilical cord wrapped around his neck, causing brain damage. The Wolfes filed a complaint for medical malpractice alleging that the child suffered brain damage, the mother suffered emotional distress, and both parents suffered the loss of the child's services, love, and affection. The doctor and hospital named as defendants settled with the Wolfes for $100,000. The Wolfes then filed a claim to recover excess damages from the Fund. The trial court subsequently granted the Wolfes' motion for summary judgment, finding that, as parents seeking damages for loss of services, they have a separate right of recovery under a separate statutory cap.[16] On appeal, we held that "a 'pa-

---

**15.** In denying a petition to transfer in *Breece,* our supreme court specifically agreed with our analysis. *Chamberlain,* 822 N.E.2d at 964.

**16.** The Wolfes also sought and were granted summary judgment on the issue of whether a single payment of $100,000 by a health care provider entitles all patients injured by the same act of malpractice to access the Fund. The Fund also appealed this issue, but be-

cause the court determined that there was only one "patient" as defined by the Act, that issue did not need to be addressed. *Id.* at 1189 n. 1. We subsequently decided in *McCarty,* 805 N.E.2d at 899–900, that where a single occurrence of malpractice results in injuries to multiple parties, a single provider payment allows each injured party to seek separate excess damage awards from the Fund.

tient' is only a person who receives or should have received health care, and ... any derivative claim that might arise from the malpractice committed on the patient is included within that patient's claim." *Id.* at 1192. "A derivative claimant is a subset of the patient and not a patient unto himself." *Id.* Applying that definition to the facts of the case, the court held that the child was the "patient" and, to the extent the Wolfes sought damages for loss of services, their claim was derivative of and not separate from the child's claim. *Id.* at 1192–93. Because the summary judgment concerned only the loss of services claim, the court did not consider the very issue we address herein: "whether a patient, such as [mother], is entitled to claim against a separate statutory damages cap for injuries she may have sustained due to the negligent infliction of emotional distress." *Id.* at 1192 n. 3.

Subsequently, in a footnote in the opinion of *Goleski*, our supreme court noted:

> [I]n *[Wolfe]*, the Court of Appeals held that a surviving parent is not a "patient" entitled to a separate statutory damages cap under the Act. The court held "a derivative claimant is a subset of the patient and not a patient unto himself." Although we believe the Court of Appeals reached the correct result in *Wolfe*, we think that derivative claimants are "patients" within the meaning of section 34–18–8–1 but are not the patients upon whom "injury or death" is inflicted.

The language of section 34–18–2–22 quoted above defines derivative claimants as "patients." However, section 34–18–14–3(a) was at issue in *Wolfe*. That section caps the damages available "for an injury or death of a patient." Although there may be persons who are statutorily defined to be "patients" and therefore may assert derivative claims for their own damages under the Act, section 34–18–14–3(a) applies the damages cap to all claims, whoever may assert them, for a single "injury or death of a patient." The only "injury or death" within the meaning of this section is the injury or death suffered by *the actual victim of the malpractice.* Thus *Wolfe* reached the correct conclusion on its facts, but was incorrect in suggesting that a derivative claimant is not a "patient" for purposes of ability to assert a claim under the Act.

768 N.E.2d at 891 n. 1 (citations omitted) (emphasis added).[17] The actual issue addressed in *Goleski* was dissimilar to the issue herein; nonetheless, based upon the stance our supreme court took with regard to our opinion in *Wolfe*, Lori and Darrin's unborn child was the "actual victim of the malpractice." By the terms of the Act, Lori and Darrin are considered derivative claimants with respect to their negligent infliction of emotional distress claims, and because their unborn child has no claim based upon the Act, Lori and Darrin are

---

**17.** The only case that seems to have cited *Wolfe* and *Goleski* in reference to the substantive issue of who is a patient is *Johnson v. Eldridge*, 799 N.E.2d 29 (Ind.Ct.App.2004), *trans. denied.* In that case, Mr. Eldridge became disabled as a result of malpractice and he and his wife filed a medical malpractice action. A jury trial resulted in a $3,399,731 verdict for the Eldridges. The doctor sought a reduction of the verdict to the $750,000 statutory cap and thereafter settled with the Eldridges for $100,000. The trial court entered judgment for Mr. Eldridge in the amount of $750,000, and for Mrs. Eldridge in the amount of $500,000. On appeal, the doctor argued that Mrs. Eldridge's "loss of consortium claim is a derivative claim and that damages awarded to her are included within the $750,000 statutory damages cap applicable to her husband's claim," citing *Wolfe* and *Goleski*. *Id.* at 36. The Eldridges conceded the point and we therefore did not independently analyze the doctor's contention. *Id.*

not entitled to a separate cap for their emotional damages.[18]

### Conclusion

Lori is entitled to a statutory cap for her injuries. Because the Winkles' unborn child is not a "patient" pursuant to the Act and because Lori and Darrin therefore have no one from whom their negligent infliction of emotional distress claims can derive, they are not entitled to separate statutory caps for their emotional damages. The trial court's order is therefore affirmed as to a single cap to Lori, and reversed as to the remainder.

Affirmed in part and reversed in part.

SHARPNACK, J., and NAJAM, J., concur.

---

**18.** Although we rule in the Fund's favor, we are compelled to note an argument the Fund advanced in both its brief and at oral argument: that every patient who is the victim of malpractice has some attendant emotional distress and if we were to consider negligent infliction of emotional distress a separate injury and allow multiple caps in this case, we would be opening the floodgates to multiple caps in every case, rapidly depleting the Fund. We have based our decision on the statute and precedent from this and our supreme court; an outcome-based determination such as the Fund seemingly advocates would be an inappropriate avenue for this court to reach a decision.