**INDIANA PATIENT'S COMPEN-
SATION FUND, Appellant–
Respondent,**

v.

**Gary PATRICK, Individually and as
Personal Representative of the Estate
of Christopher Patrick, Deceased, Ap-
pellee–Petitioner.**

No. 49A02–0807–CV–614.

Court of Appeals of Indiana.

May 18, 2009.

Edward J. Fujawa, Indiana Department of Insurance, Anne L. Cowgur, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Jerry A. Garau, Deborah K. Pennington, Garau Germano Hanley & Pennington, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Indiana Patient's Compensation Fund (the Fund), appeals the trial court's Findings of Fact, Conclusions of Law and Judgment in favor of Appellee–Petitioner, Gary Patrick (Patrick), Individually and as Personal Representative of the Estate of Christopher Patrick, Deceased.

We affirm.[1]

### ISSUE

The Fund presents three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred when it granted Patrick an independent claim for damages for emotional distress in conjunction with his claim under the Adult Wrongful Death Statute.

### FACTS AND PROCEDURAL HISTORY

Patrick is the natural father of Christopher Patrick (Christopher). At the time of his death, Christopher was thirty-one years old, had no dependent survivors, and lived with his father. On January 20, 2002, Christopher was involved in an automobile accident and, as a result, suffered a broken wrist, broken nose, and abdominal trauma. He was treated at St. Mary's Medical Center in Evansville, Indiana, and discharged the next day, on January 21, 2002. Patrick questioned the discharge order because Christopher was still in pain and had substantial abdominal swelling.

That evening, Christopher started vomiting blood. Patrick called 911. When the EMT's finally arrived, Christopher had blood coming out of his nose and mouth. His eyes rolled back in his head as he fell onto his bed. The EMT's moved Christopher to the floor and attempted to resuscitate him. Christopher never regained consciousness and was pronounced dead upon arrival at the hospital. The cause of death was an untreated ruptured colon from seatbelt trauma.

1. We heard oral argument in this case on March 3, 2009, at Wabash College in Crawfordsville, Indiana. We thank Wabash College for its hospitality in hosting the argument and appreciate the thoughtful comments made by counsel of both parties.

As a result of his son's death, Patrick, individually and as personal representative of Christopher's Estate, brought a medical malpractice action against the physician who treated Christopher and against St. Mary's Medical Center. In addition to claiming damages for his son's death, Patrick asserted a claim for his own emotional distress. Patrick settled his claims against the health care providers with the health care providers agreeing to pay a present value settlement of $187,001.00 in a structure that would pay out $250,000.00 over time. After the settlement, Patrick, individually and as personal representative of Christopher's Estate, filed his petition for payment of excess damages against the Fund.[2]

On May 15, 2008, the Fund moved for summary judgment on Patrick's individual claim for emotional distress damages, arguing that damages for negligent infliction of emotional distress are not recoverable under the Adult Wrongful Death Statute, I.C. § 34–23–1–2. Additionally, assuming that the Statute can be understood to include the requested damages, the Fund maintained that Patrick had not satisfied the requirements of Indiana's modified impact rule and bystander rule for recovering emotional distress damages under Indiana law. Patrick opposed the motion, claiming that he had an independent claim for emotional distress arising from the cir-

cumstances surrounding the death of his adult son. On June 18, 2008, before hearing argument on the Fund's motion for summary judgment, the trial court conducted a damages hearing pursuant to I.C. § 34–18–15–3. Thereafter, on June 27, 2008, the trial court proceeded with the hearing on the Fund's motion for summary judgment.

That same day, on June 27, 2008, the trial court issued its Findings of Fact, Conclusions of Law and Judgment. In its Order, the trial court found that the Adult Wrongful Death Statute applied to Patrick's claim as personal representative of Christopher's Estate and assessed his damages as $300,000.00 for the loss of Christopher's love and companionship, increased by $16,531.66 in medical, hospital, funeral and burial expenses. In addition, the trial court concluded that Patrick's claim for emotional distress damages was independent of his claim for damages under the Adult Wrongful Death Statute and awarded him $600,000.00 on his independent emotional distress claim.

The Fund now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

The Fund contests the trial court's Findings of Fact, Conclusions of Law and

---

**2.** Under the Indiana Medical Malpractice Act, the total recovery in a medical malpractice action is limited to $1,250,000.00 per injury or death. The Act caps a health care provider's malpractice liability at $250,000.00 per occurrence if the provider maintains sufficient insurance and pays the required surcharge to the Fund. I.C. §§ 34–18–3–1, –14–3(b). The Fund is financed by the surcharges collected from providers throughout the state and pays "excess damages." *Atterholt v. Herbst*, 902 N.E.2d 220, 222 (Ind.2009). Recovery of excess damages from the Fund is allowed only after a health care provider or the provider's insurer has paid the first

$250,000.00 or made a settlement in which the sum of the present cash payment and cost of future periodic payments exceeds $187,000.00. *Id.; see also* I.C. § 34–18–14–4(b). Multiple providers' cash payments and contributions to a periodic payments agreement are aggregated for purposes of the $187,000.00 requirement. *Id.; see also* I.C. § 34–18–14–4(c). If the Fund and the claimant cannot agree on the amount to be paid from the Fund, the trial court must hold a hearing to determine the amount for which the Fund is liable. *Id.; see also* I.C. § 34–18–15–3(4)–(5).

Judgment in favor of Patrick. When the trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review. We determine first whether the evidence supports the trial court's findings, and second, we determine whether the findings support the judgment. *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 212 (Ind.Ct.App.2006). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. *Id.* In establishing whether the findings or the judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

While conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.* However, while we defer substantially to findings of fact, we do not do so for conclusions of law. *Id.* We evaluate conclusions of law *de novo* and owe no deference to a trial court's determination of such questions. *Id.*

## II. *Analysis*

The Fund asserts that the trial court erred when it granted Patrick an independent claim for emotional distress damages in conjunction with his claim under the Adult Wrongful Death Statute. Because Patrick's claim derives from the death of his son, the Fund maintains that his claim is more properly characterized as *derivative* rather than independent and as such, clearly falls within the damage limitations of the Adult Wrongful Death Statute. However, the Fund continues, whereas the Adult Wrongful Death Statute provides for recovery of actual pecuniary losses, the Statute does not include a provision for the recovery of damages for emotional distress. Therefore, the Fund concludes that Patrick is not entitled to damages. Conceding that emotional distress damages are not permitted under the Adult Wrongful Death Statute, Patrick asserts that Indiana courts have repeatedly recognized that an *independent* action for emotional distress may proceed in conjunction with a claim for wrongful death.

We find that much of the confusion in this area of law stems from the fact that damages for emotional distress are treated differently depending upon the vehicle with which they are instituted: whether they are brought in combination with the Wrongful Death Statute or as part of the Medical Malpractice Act.

■ No cause of action for wrongful death existed at common law. *Chamberlain v. Walpole*, 822 N.E.2d 959, 961 (Ind. 2005). An action for wrongful death is therefore purely statutory and is strictly construed. *Durham v. U–Haul Int'l*, 745 N.E.2d 755, 759 (Ind.2001), *reh'g denied.* The Wrongful Death Statute permits claims for wrongful death and authorizes suits by a personal representative of a decedent for death caused by the "wrongful act or omission of another." I.C. § 34–23–1–1. If the decedent has no surviving "widow, widower, or dependent children, or dependent next of kin" the statute limits damages to "hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees." I.C. § 34–23–1–1; *Chamberlain*, 822 N.E.2d at 961.

On the other hand, the Medical Malpractice Act governs claims for bodily injury or death of a patient as a result of "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a

health care provider, to a patient." I.C. § 34–18–2–18. The Act defines "patient" as "an individual who received or should have received health care from a health care provider ... and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." I.C. § 34–18–2–22.

We recently explained the difference between a derivative claim and an independent claim for damages for emotional distress with regard to the respective Statutes in *Indiana Patient's Compensation Fund v. Winkle*, 863 N.E.2d 1 (Ind.Ct.App.2007), *reh'g denied, trans. denied*. We noted that a cause of action is derivative if it may be brought only where a separate, related claim is actionable. *Id.* at 6. The derivative claimant must prove all the elements of the related tort in order to recover. *Id.* A cause of action is independent if it may be brought irrespective of the merits of an accompanying tort. *Id.*

> Loss of consortium, loss of services, loss of love and affection, and other such claims, are purely relational. That is, they inure to the claimant only because of the relationship that exists between the claims and the injured, be it husband and wife or parent and child. They do not require that the claimant has been involved in or even present during the incident that caused the injury. They are basically an additional element of the damage caused by the incident; hence, they are considered derivative. Negligent infliction of emotional distress, however, is not an element of the damage, but the damage itself. It is a direct, personal, on-the-scene injury. As claims of negligent infliction of emotional distress no longer require an underlying physical injury or even a physical impact, we have held on numerous

recent occasions that it is an independent tort.

*Id.; see generally Lachenman v. Stice*, 838 N.E.2d 451, 457–61 (Ind.Ct.App.2005), *reh'g denied, trans. denied* (analyzing the evolution of Indiana case law on the subject of negligent infliction of emotional distress).

Although we characterized a claim for damages for emotional distress as an independent tort, we were careful to distinguish its treatment under the Medical Malpractice Act. Because the Act defines a derivative claim as including "the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for the loss of services, loss of consortium, expenses, *and other similar claims*," we found ourselves bound by precedent and the rules of statutory construction to conclude that such a claim, when made under the Medical Malpractice Act, falls under the Act's definition of "derivative claim." *Winkle*, 863 N.E.2d at 7; I.C. § 34–18–2–22. Thus, in *Winkle*, we held that when the claim arises in the context of medical malpractice, the parameters of the medical malpractice statute define the limits of the claim; that is, who can recover and how much they can recover. *Id.* at 6–7. Basically, the existence of a "patient" as defined by the Medical Malpractice Act and case law interpreting that definition is a condition precedent to any cause of action thereunder.

Here, Patrick asserted that his emotional damages arose from the negligence of the medical personnel treating his son. His claim thus arises in the context of medical malpractice. Christopher was clearly a "patient" as defined by the Act. *See* I.C. § 34–18–2–22 (" 'Patient' means an individual who receives or should have received health care ...."). Therefore, Christopher had a claim for medical mal-

practice as the actual victim of the malpractice. Patrick, being Christopher's parent and having a "claim of any kind," is also considered a "patient." *See id.* (" 'Patient' ... includes a person having a claim of any kind, whether derivative or otherwise, as a result of the alleged malpractice ..."). Having met the condition precedent for a cause of action for medical malpractice, the fact that Christopher subsequently died as a result of the malpractice and the claim had to be pursued under the Adult Wrongful Death Statute does not alter the existence or the nature of the claim. Thus, the trial court properly characterized Patrick's claim for damages for emotional distress as independent of and in addition to the adult wrongful death claim.

Next, we need to turn our attention to whether Patrick's claim satisfies the requirements necessary to assert his own independent claim for damages for emotional distress. Traditionally, Indiana courts analyzed claims for negligent infliction of emotional distress under the impact rule, which required a physical injury caused by an impact to the plaintiff. *See Ryan v. Brown,* 827 N.E.2d 112, 119 (Ind. Ct.App.2005). In *Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind.1991), our supreme court modified the impact rule, holding that when:

> a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person[,] ... such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

Following *Shuamber,* cases continued to interpret the modified impact rule as requiring a direct physical impact. *See, e.g., Lachenman,* 838 N.E.2d at 457 (numerous citations omitted).

On June 7, 2000, our supreme court signaled a new significant development in the law of negligent infliction of emotional distress when it decided *Groves v. Taylor,* 729 N.E.2d 569 (Ind.2000). In *Groves,* the court adopted the bystander rule when it held that

> where the direct impact test is not met, a bystander may nevertheless establish direct involvement by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise [tortious] conduct.

*Id.* at 573. The holding recognizes that the emotional distress claim does not arise from the death of another, but rather from the direct involvement of the individual bringing the claim in the events which have caused the emotional distress. In other words, the claim is not based upon harm suffered by another; it is based upon harm which is personal to the individual bringing the claim.

Turning to the present case, Patrick is asserting damages for emotional distress as a bystander pursuant to the *Groves'* criteria.[3] Since *Groves* was decided, a number of cases have considered fact situations analogous to the instant case and found bystander emotional distress claims. In *Ryan v. Brown,* 827 N.E.2d 112, 116

---

**3.** We acknowledge that the Fund conceded that Patrick is a bystander pursuant to the *Groves'* criteria; nevertheless, because of this case's importance we will fully analyze Patrick's claim.

(Ind.Ct.App.2005), the parents of a child who was stillborn as a result of the defendant's healthcare providers' negligent failure to diagnose and treat preeclampsia sought to bring emotional distress claims against the healthcare providers. Although the father of the child was not present for all of the negligent acts which ultimately led to the baby's death, he was present when the child was delivered stillborn. *Id.* at 122. We held that the father could bring a claim for emotional distress under *Groves*. *Id.* at 123.

In *Indiana Patient's Compensation Fund v. Butcher*, 863 N.E.2d 11 (Ind.Ct. App.2007), Dorothy Butcher was involved in a car accident when she was thirty-eight weeks pregnant. *Id.* at 12–13. Following the accident, she was taken to a nearby hospital where an emergency room physician determined that the unborn child's heart tones were reassuring. *Id.* at 13. Based on this assessment, Dorothy was transferred to another hospital for delivery of the baby. *Id.* On arrival at the second hospital, the health care providers were unable to detect any fetal heart tones. *Id.* An emergency cesarean section was performed and the baby was delivered with no spontaneous respirations or pulse. *Id.* The baby was resuscitated and placed on a ventilator, but died within a few days of birth. *Id.* The baby's father, Eric Butcher, was present for the baby's death, but was not present for the negligent acts of the health care providers at the first hospi-tal which preceded the baby's death by several days. *Id.* Despite this, we found that Eric had an individual claim for damages for emotional distress.[4] *Id.* at 16.

■ Likewise, here, although Patrick was not present when the medical malpractice occurred—the health care provider's failure to diagnose Christopher's ruptured colon—he did deal with its aftermath. After Christopher was discharged from the hospital, Patrick took him home. That evening, Christopher called out to his father because he was vomiting blood. While Patrick was calling an ambulance, he saw Christopher throw up again, with blood coming out of his nose and mouth. Patrick went back and forth between his son's bed and the street to look for the ambulance. When the EMTs finally arrived, Patrick immediately escorted them to Christopher's room. Christopher's eyes rolled back in his head as he fell back on the bed. The EMTs moved Christopher to the floor and attempted to resuscitate him. He never regained consciousness.

■ Based on these facts, it is clear that Patrick witnessed the death of a loved one, a death caused by the negligent conduct of health care providers. As a result, we find that the trial court properly concluded that Patrick, as a bystander pursuant to *Groves*, could bring an independent claim for the negligent infliction of his emotional distress upon Christopher's death.[5]

---

4. Interestingly, the Fund in *Butcher* conceded that both parents were entitled to assert claims for negligent infliction of emotional distress, a position which is directly contradicted by the arguments the Fund is advancing here. *Butcher*, 863 N.E.2d at 16.

5. In so far as the Fund now formulates an argument under the Medical Malpractice Act, we note that this is a new claim, raised for the first time on appeal. In its motion for summary judgment, the Fund only focused on whether Patrick was "entitled under the A[dult] W[rongful] D[eath] S[tatute] to recover damages for emotional distress in addition to damages for love and companionship." (Appellant's App. p. 49). During the trial court's hearing on the Fund's motion, the parties solely presented argument on the Fund's "position that the emotional distress claim by [Patrick] is not recoverable under the Adult Wrongful Death Statute." (Transcript p. 41). Thus, as the Fund's argument with regard to the Medical Malpractice Act

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted Patrick an independent claim for damages for emotional distress in conjunction with his claim under the Adult Wrongful Death Statute.

*Affirmed.*

MAY, J., and ROBB, J., concur.

was not before the trial court, the Fund has waived the issue for our review. *See United Farm Bureau Mut. Ins. Co. v. Lowe,* 583 N.E.2d 164, 168 (Ind.Ct.App.1991), *trans. denied.*