James BREECE, Geneva Breece, Individually and On Behalf of their Daughter, Alicia Marie Breece, Deceased, Appellants–Plaintiffs,

v.

Stephen D. LUGO, M.D., St. John'S Health System, Madison County Imaging, P.C., Sara Y. Shull, M.D., and Connie D. Harrill, M.D., Appellees–Defendants.

No. 48A02–0302–CV–105.

Court of Appeals of Indiana.

Dec. 18, 2003.

Rehearing Denied Feb. 18, 2004.

Gerald W. Mayer, Indianapolis, IN, Attorney for Appellants.

George T. Patton, Jr., Melinda R. Shapiro, Bryan H. Babb, Bose McKinney & Evans LLP, Edna M. Koch, Katheryn A. Elias, Zeigler Cohen & Koch, John David Hoover, Sarah S. Fanzini, Hoover Hull Baker & Heath, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants James Breece ("James") and Geneva Breece ("Geneva") (collectively, "the Breeces"), both individually and on behalf of their daughter, Alicia Marie Breece ("Alicia"), appeal the trial court's grant of partial summary judgment in favor of Defendants–Appellees Stephen D. Lugo, M.D. ("Lugo"), St. John's Health System ("St. John's"), Madison County Imaging, P.C., Sara Y. Shull, M.D. ("Shull"), and Connie D. Harrill, M.D. ("Harrill") (collectively, "Healthcare Providers").

We affirm in part and reverse in part.

### ISSUES

The Breeces raise two issues for our review, which we restate as:

I.   Whether the trial court erred in determining as a matter of law that Indiana does not recognize a cause of action for the *in utero* death of a fetus and that the Medical Malpractice Act does not create a separate cause of action for child wrongful death.

II.  Whether the trial court erred in determining as a matter of law that the Breeces do not have a claim for negligent infliction of emotional distress arising from the fetal demise of their daughter.

### STATEMENT OF THE FACTS

On October 3, 1996, Geneva, who was pregnant with twins at an approximate gestational age of 36½ weeks, arrived at St. John's for medical assistance. At the time Geneva arrived at St. John's, she was experiencing contractions every six minutes. An ultrasound was conducted, and it was determined that there was only one fetal heartbeat. An emergency caesarian section was performed, which resulted in the delivery of one healthy baby and one deceased fetus. The Breeces named the decedent "Alicia."

On June 20, 1997, the Breeces, individually and on behalf of Alicia, filed a proposed complaint for damages with the Indiana Department of Insurance against the Healthcare Providers. Among other things, the proposed complaint alleged that the carelessness and negligence of each of the Healthcare Providers was a direct and proximate cause of Geneva's physical injuries and Alicia's *in utero* death. The proposed complaint also alleged that both James and Geneva suffered damages, including emotional distress, as a direct result of the Healthcare Providers' negligence.

The Healthcare Providers responded by filing motions for a preliminary determination of law and for a partial summary judgment, asking the trial court to determine as a matter of law that the Child Wrongful Death Act precluded the Breeces from bringing an action for the wrongful death of Alicia. The Healthcare Providers subsequently filed a motion asking the trial court to determine that Indiana law precluded James and Geneva from recovering for any emotional distress

damages caused by that death.[1] The Healthcare Providers acknowledged that Geneva could bring a negligence action for her own physical injuries.

After a hearing, the trial court granted partial summary judgment in favor of the Healthcare Providers. The trial court determined as a matter of law that the Breeces cannot recover under the Child Wrongful Death Act and that they cannot recover for any negligent infliction of emotional distress arising from Alicia's *in utero* death. The trial court further determined that Geneva may proceed with her medical malpractice action "only as to injuries she alleges occurred to her as a result of the allegedly negligent acts or omissions identified in the Amended Proposed Complaint." Appellants' App. at 15.

The Breeces now appeal.

## DISCUSSION AND DECISION
### STANDARD OF REVIEW

■ Here, the trial court made findings of fact and conclusions of law in favor of its decision. The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App.1998). Findings of fact and conclusions of law are neither required nor prohibited in the summary judgment context. *Id.* Although specific findings and conclusions aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Id.* The interpretation of a statute by a trial court is a question of law to

which this court owes no deference. *Morgan County v. Ferguson*, 712 N.E.2d 1038, 1043 (Ind.Ct.App.1999). Furthermore, we review all questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *Art Country Squire, L.L.C. v. Inland Mortgage Corp.*, 745 N.E.2d 885, 889 (Ind.Ct.App.2001).

### I. WRONGFUL DEATH ACTION

■ In *Bolin v. Wingert*, 764 N.E.2d 201, 207 (Ind.2002), our supreme court reviewed a case where the plaintiff miscarried an eight to ten week old fetus following an automobile accident. The plaintiff brought suit under the Child Wrongful Death Act for the loss of her child. After stating that its sole task was "to determine the scope of the term 'child' in the Wrongful Death Statute," the court determined that the term, as used in the Wrongful Death Act, only permitted recovery for "children born alive." *Id.* Accordingly, the court held that the plaintiff had no right of recovery.

The Breeces acknowledge that Indiana does not recognize a cause of action under the Child Wrongful Death Act[2] for the *in utero* death of a fetus. However, they emphasize that their suit is pursuant to the Medical Malpractice Act[3], and they argue that they have an independent action for wrongful death under that Act. In support of their argument, the Breeces point to Ind.Code § 34–18–8–1 which states that "[a] patient or the representative of a patient who has a claim under this article for bodily injury or death on account of malpractice may ... file a complaint in any

---

**1.** St. John's filed the original motions, which the remaining Healthcare Providers subsequently joined.

**2.** The version of the Child Wrongful Death Act that was in effect at the time of the alleged injury was codified at Ind.Code § 34–1–1–8 *et*

*seq.* The Act has since been recodified as Ind.Code § 34–23–2–1 *et seq.* The recodification did not result in any material difference for purposes of this appeal.

**3.** Ind.Code § § 34–18–1–1 to 34–18–18–2.

court of law having requisite jurisdiction." Furthermore, they cite *Miller v. Terre Haute Regional Hospital*, 603 N.E.2d 861 (Ind.1992) and *Hopster v. Burgeson*, 750 N.E.2d 841 (Ind.Ct.App.2001) for the proposition that a wrongful death claim is properly brought under the Medical Malpractice Act.

The issue of whether the Medical Malpractice Act creates an independent cause of action was addressed in *Warrick Hospital, Inc. v. Wallace*, 435 N.E.2d 263 (Ind. Ct.App.1982), *rev'd in part and affirmed in part*. In *Warrick Hospital*, Wallace filed a complaint under the Medical Malpractice Act contending that the wrongful death of her husband and resultant loss of consortium were caused by the negligence of certain healthcare providers. The healthcare providers filed a motion asserting that they were entitled to summary judgment in their favor because Wallace did not apply for appointment as administratrix within the time limit set forth in the Wrongful Death Act. Wallace countered that because she was a "representative" entitled to bring suit under the Medical Malpractice Act, she did not have to comply with the Wrongful Death Act.

In deciding whether Wallace should be able to maintain her claim, the court considered two pertinent issues. First, the court asked whether the Medical Malpractice Act creates a cause of action for wrongful death "separate and distinct from that created by the Wrongful Death Act." 435 N.E.2d at 265. Second, the court asked whether Wallace's failure to comply with the procedural requirements of the Wrongful Death Act was "fatal to her wrongful death action." *Id.* The court answered "no" to the former question and "yes" to the latter question.

In determining that the Medical Malpractice Act does not create an independent cause of action, the court stated

The wrongful death statute was enacted to provide a remedy which did not exist at common law, that is, a cause of action for damages for death caused by the wrongful act of another. On the other hand, the Indiana Medical Malpractice Act was enacted to meet the problems of the rapidly escalating cost to physicians of malpractice insurance, the near unavailability of such coverage to physicians engaged in certain high risk specialties, and because "(h)ealth care providers had become fearful of the exposure to malpractice claims and at the same time were unable to obtain adequate malpractice insurance at reasonable prices." *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., [273 Ind. 374,] 404 N.E.2d 585, 589–90.[4] The legislature thus responded to the vital needs of the community to preserve the availability of health care services to the citizens of this state. *Id.* The obvious purpose of the Medical Malpractice Act is to provide some measure of protection to health care providers from malpractice claims, thus to preserve the availability of such professional health care services to the community. *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, (1980) Ind.App., 410 N.E.2d 1319, *trans. denied*.

We do not believe that the Medical Malpractice Act created any separate cause of action for wrongful death or that the legislature intended to do so. The obvious purpose of the act was to protect health care providers from malpractice claims, *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, *supra*, not to create new and additional causes of action. Were it to create a separate cause of

**4.** This case has been abrogated in part by    *Collins v. Day*, 644 N.E.2d 72 (Ind.1994).

action it would increase the incidence of such claims rather than protect against them....

The source of the action is dependent upon traditional concepts of tort law and is derived either from the common law or statutory law already existing, but does not spring from the malpractice act. Since there is no common law action for wrongful death, the basis for such an action must be the Wrongful Death Act. The Medical Malpractice Act affects the right of action for wrongful death only to the extent of limiting the recovery and establishing the requirement of submission of the claim to the medical review panel created by the act. Further, it is obvious that the wrongful death claim is predicated upon the negligence of the defendant health care providers. If true, such a death is clearly "caused by the wrongful act or omission of another" and within the purview of [the Wrongful Death Act].

435 N.E.2d at 267 (statutory citations omitted).

In determining that Wallace was required to comply with the procedural requirements of the Wrongful Death Act, the court held that the right to prosecute a claim for wrongful death based upon medical malpractice "is governed by the wrongful death statute with regard to the parties eligible to institute such proceeding, the persons for whose benefit recovery may be had, and the manner of distribution of such proceeds." 435 N.E.2d at 268. The court further held that "such a plaintiff must meet and comply with all conditions precedent necessary to bring such an action, specifically including being duly appointed as the patient's personal representative within two years of the date of death." *Id.*

Four years after *Warrick Hospital* was decided, the supreme court had an opportunity to decide the issue of whether a plaintiff pursuing a wrongful death action against a healthcare provider must first be appointed personal representative under the procedural requirements of the Wrongful Death Act. In *Community Hospital of Anderson and Madison County v. McKnight,* 493 N.E.2d 775 (Ind.1986), the court held that the Medical Malpractice Act "is plain and unambiguous in designating who qualifies as a representative and in designating those who are eligible to pursue derivative claims." 493 N.E.2d at 777. The court further held that the Medical Malpractice Act "is also plain and unambiguous in designating that such claims can be for bodily injury or death." *Id.* The court overruled *Warrick Hospital* "[t]o the extent that the holding ... conflicts with the holding here." *Id.*

We read *McKnight* as overruling the portion of *Warrick Hospital* that imposed the procedural requirements of the Wrongful Death Act upon a plaintiff filing a Medical Malpractice action. At the same time, the court left intact the portion of *Warrick Hospital* pertaining to the specific purpose of the Act in preserving the availability of professional healthcare services to the community by protecting healthcare providers from malpractice claims. Significantly, the supreme court did not hold that the Medical Malpractice Act created a cause of action that was not recognized by either the common law or the Wrongful Death Statute. For the reasons stated in *Warrick Hospital,* we hold that the Medical Malpractice Act does not create a new cause of action for the wrongful death of a fetus.[5] We particularly emphasize that the

---

**5.** The Breeces have cited *Chamberlain v. Walpole,* 796 N.E.2d 818 (Ind.Ct.App.2003) in support of their argument. In *Chamberlain,* a panel of this court determined that the damages provision of the Medical Malpractice Act applies when the alleged negligence of a

Medical Malpractice Act neither created a new class of plaintiffs nor enlarged the scope of damages that can be sought against healthcare providers.[6]

## II. DAMAGES ARISING FROM GENEVA'S INJURIES

■ The trial court held that Geneva was not entitled to pursue "an action for negligent infliction of emotional distress relative to the fetal demise of [Alicia]." Conclusion of Law # 42; Appellant's Appendix at 14. On appeal, the Healthcare Providers argue that this court should affirm the trial court, and in doing so, adopt the reasoning expressed in *Smith v. Borello*, 370 Md. 227, 804 A.2d 1151 (2002).

In *Borello,* the Maryland Court of Appeals held that a pregnant woman who sustains personal injury as a result of a defendant's tortious conduct, and who, as part of that injury, suffers the loss of her unborn child "may recover, in her own action for personal injuries, for any demonstrable emotional distress that accompanies and is attributable to the loss of the fetus." 804 A.2d at 1163. The court held that the emotional distress giving rise to recovery includes distress arising from the unexpected termination of the woman's pregnancy and distress caused by the enduring of a miscarriage or stillbirth. *Id.* The court also held that an award of damages for emotional distress may include compensation for

> The depression, anguish, and grief that arises from termination of the pregnancy, the manner in which the pregnancy

was terminated, and from the miscarriage or stillbirth—the distress of not having been able to carry through to a successful completion of the pregnancy, of having to carry a fetus or a child which is destroyed by someone else's tortious conduct, of having to witness at the time of miscarriage or delivery the stillborn child or fetal tissue that was to be her child. . . .

*Id.*

The court further held, however, that in the context of facts similar to the ones before this court, an award does not include "pecuniary losses or [loss of consortium] damages recoverable under the wrongful death statute, whether or not that statute applies in the circumstance." *Id.* The court concluded that "[t]he recovery, in other words, is for the psychic injury inflicted on the mother and not for her sorrow over the loss of the child. Recovery for that sorrow must be had, if at all, under the wrongful death statute." *Id.*

After holding in *Bolin* that the mother of the deceased unborn child could not recover under the Child Wrongful Death Statute, our supreme court held that "the exclusion of unborn children from the Indiana Child Wrongful Death Statute does not mean that negligently injured expectant mothers have no recourse." 764 N.E.2d at 207. In support of its holding, the supreme court cited *Rambo v. Lawson,* 799 S.W.2d 62, 63 (Mo.1990), *superseded by statute as stated in Connor v. Monkem Co.,* 898 S.W.2d 89 (Mo.1995), in which the Missouri Supreme Court opined that "[t]he

---

healthcare provider caused the wrongful death. We note that *Chamberlain* has not been certified and that it is not a majority opinion. To the extent that *Chamberlain* may be deemed applicable to this case, we find the reasoning of the dissent to be the most persuasive and consistent of the three views expressed. *See Baker, J. dissenting.*

**6.** We recognize that the Mississippi Supreme Court recently held that a fetus is a "person" under the Mississippi Wrongful Death Statute. *See 66 Federal Credit Union v. Tucker,* 853 So.2d 104 (Miss.2003). We note that the language of the Mississippi statute differs significantly from Indiana's statute.

mother has her own action for negligently inflicted injury, in which the circumstances of her pregnancy and miscarriage may be brought out and considered as part of intangible damages." *Id.* Our supreme court did not place the type of restrictions upon recovery that were expressed in *Borello,* and we are of the opinion that we may not impose such restrictions when our State's highest court did not do so.

Accordingly, we hold that the trial court erred as a matter of law in finding against the Breeces on this issue.

### CONCLUSION

The trial court was correct in granting summary judgment on the issue of whether the Medical Malpractice Act creates an action not available under the Child Wrongful Death Act. The trial court erred, however, in granting summary judgment on the issue pertaining to the extent of Geneva's recovery of intangible damages.[7]

Affirmed in part and reversed in part.

ROBB, J., and VAIDIK, J., concur.

---

7. The Healthcare Providers invite us to exercise our "inherent authority to review" an issue that "is not currently before this Court." Appellee's Brief at 19–20. We decline the invitation.