ATTORNEY FOR PLAINTIFFS
Lance Wittry
Wittry Law Office
Indianapolis, Indiana

ATTORNEYS FOR DEFENDANTS
Barbara Bechtel, Nurse-Midwife,
and Expectations Women's Health
and Childbearing Center
Edward L. Murphy, Jr.
Heidi K. Koeneman
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

ATTORNEYS FOR DEFENDANT
St. Vincent Randolph Hospital
Robert G. Zeigler
Bobby J. Avery-Seagrave
Zeigler Cohen & Koch
Indianapolis, Indiana

FILED
Dec 13 2011, 10:46 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S05-1012-CV-703

STEVEN SPANGLER AND
HEIDI BROWN,                                             *Appellants (Plaintiffs below),*

v.

BARBARA BECHTEL,
EXPECTATIONS WOMEN'S HEALTH AND CHILDBEARING CENTER, AND
ST. VINCENT RANDOLPH HOSPITAL,          *Appellees (Defendants below).*

Appeal from the Marion Superior Court, No. 49D03-0306-CT-1120
The Honorable Patrick McCarty, Judge

On Transfer from the Indiana Court of Appeals, No. 49A05-0908-CV-482

**December 13, 2011**

**Dickson, Justice.**

Following the death of their full-term baby daughter *in utero* during labor, just before childbirth, the plaintiffs Steven Spangler and Heidi Brown brought this action seeking damages for negligent infliction of emotional distress. In the ensuing litigation, the trial court granted summary judgment to St. Vincent Randolph Hospital, to Barbara Bechtel (the nurse-midwife who provided pre-natal care during the mother's pregnancy and managed her labor at the hospi-

tal), and to Expectations Women's Health and Childbearing Center ("the Center") (alleged by the plaintiffs to be Bechtel's employer). The Court of Appeals reversed as to all three defendants. Spangler v. Bechtel, 931 N.E.2d 387 (Ind. Ct. App. 2010). We granted transfer and now hold that the parents' separate actions seeking damages for emotional distress from experiencing the stillbirth of their child are not barred by the Indiana Child Wrongful Death Act or the Indiana Medical Malpractice Act.

The underlying facts of the case are not in dispute and are provided in detail by the Court of Appeals. *Id.* at 389–90. Summarized briefly, Heidi Brown was pregnant with a baby girl who was also the child of Steven Spangler. Brown arrived at St. Vincent Randolph Hospital on February 24, 2003, for delivery services because she had begun active labor.[1] The plaintiffs' child was delivered stillborn the same day. Both parties concede that the child died *in utero* prior to the delivery. As of the time of the summary judgment proceedings, the plaintiffs' amended complaint asserted three counts. The first count, directed against all three defendants, alleges medical negligence in the provision of obstetrical care and treatment. The second and third counts, against the hospital only, allege that the hospital inadequately supervised nurse-midwife Bechtel and that it negligently granted her hospital privileges and failed to suspend them. As to the hospital, the action is proceeding under the Indiana Medical Malpractice Act ("the MMA").[2] Bechtel and the Center are not covered by the MMA because they were not qualified health care providers under the MMA on the relevant dates of treatment.

The plaintiffs' challenges to the trial court's summary judgment rulings present only legal issues, not factual ones. In reviewing the grant of summary judgment, an appellate court faces the same issues that were before the trial court. Carie v. PSI Energy, Inc., 715 N.E.2d 853, 855 (Ind. 1999). "Where . . . the dispute is one of law rather than fact, a *de novo* standard of review applies." Wilson v. Isaacs, 929 N.E.2d 200, 202–03 (Ind. 2010).

---

[1] From the designated evidence, it is unclear whether the father, Steven Spangler, was present during any part of the incident.
[2] The plaintiffs' Medical Malpractice Act claim against the hospital was submitted to a medical review panel that determined that the hospital breached the standard of care, but the panel was divided on whether the breach "was" or "may have been" a factor in the child's death. Appellants' Br. at 5 & n.6.

2

**1. Summary Judgment Motion of the Nurse-Midwife and her Employer**

The nurse-midwife, Bechtel, and her alleged employer, the Center, jointly sought summary judgment on grounds that the plaintiffs' claims for negligent infliction of emotional distress are governed by the Indiana Child Wrongful Death Act ("the CWDA"), Ind. Code § 34-23-2-1, under which a claim for the wrongful death of an unborn child was not cognizable at the time of the death of the plaintiffs' child in this case. In granting the motion, the trial court concluded: (a) that the plaintiffs' claims for emotional distress could not proceed under the CWDA because they were based on the death of an unborn child, which was not a "child" for the purposes of the CWDA; (b) that the plaintiffs did not have valid claims for negligent infliction of emotional distress because they do not identify any negligently-inflicted injuries on another as required under the modified impact rule nor did they sustain a direct impact or demonstrate sufficient "direct involvement." Findings of Fact, Conclusions of Law and Judgment, Appellants' App'x at 15–24.

*A. Child Wrongful Death Act and the Claims for Emotional Distress from Stillbirth*

As of the date of the unborn child's death and subsequent stillbirth, February 24, 2003, Indiana law precluded any claim for damages under the CWDA. Bolin v. Wingert, 764 N.E.2d 201, 207 (Ind. 2002) (holding that an eight- to ten-week-old fetus does not satisfy the definition of "child" under the CWDA and that "only children born alive fall under the [CWDA]").[3] Earlier in the present litigation, the plaintiffs sought damages not only for emotional distress but also for the wrongful death of their unborn child. But when the hospital sought partial summary judgment asserting such an action was precluded by Bolin, the plaintiffs conceded that it dictated the dismissal of their claim for wrongful death under the CWDA. Appellants' App'x at 54. As a result, the trial court granted partial summary judgment dismissing the claims of the plaintiffs brought under the CWDA but expressly ruling: "The claims of the plaintiffs for emotional distress relating to the death of their child was [sic] not implicated in defendant's motions, and as such, this action will proceed on this basis." *Id*. at 57. The plaintiffs subsequently filed an amended complaint asserting only claims for negligent infliction of emotional distress, to which

---

[3] After Bolin, the General Assembly amended the CWDA to allow a wrongful death action for "a fetus that has attained viability." P.L. 129-2009, sec. 8, 2009 Ind. Acts 1172 (codified as amended at Ind. Code § 34-23-2-1).

all three defendants filed renewed motions for summary judgment.

Supporting their motion for summary judgment in the trial court, Bechtel and the Center argued that the emotional distress claims are governed by the CWDA because they are not qualified providers under the MMA and because the plaintiffs' claims for emotional distress are "tantamount to a claim for the loss of love and affection provided for under the CWDA." Appellants' App'x at 234–35. These defendants argue on appeal that the CWDA governs because the plaintiffs' emotional distress claims necessarily arise from the death of their fetus and should not be treated as separate torts.

The logic of this argument is dubious. On one hand, these defendants argue that the parents' emotional distress claims must be interpreted under the CWDA because it is "the vehicle for recovery following the death of a child," Appellees Bechtel's and the Center's Br. at 8, but, on the other hand, they assert that such claims must then fail because this unborn child was not in fact a "child" under the CWDA. *Id.* at 11–12. To the contrary, that the CWDA provides no remedy for wrongful death damages for the death of an unborn child does not preclude the availability of a separate action for damages founded on a basis other than wrongful death.

Significantly, while <u>Bolin</u> did not allow an action under the CWDA for wrongful death of an unborn child, it nevertheless expressly permitted the mother to "claim damages to compensate her for her miscarriage" resulting from a traffic accident where the mother's vehicle was struck from behind by the defendant's vehicle. 764 N.E.2d at 203, 207–08. Noting with emphasis this aspect of <u>Bolin</u>, the Court of Appeals has interpreted <u>Bolin</u> to allow actions for emotional distress brought by mothers who suffer a miscarriage notwithstanding the CWDA. <u>Ryan v. Brown</u>, 827 N.E.2d 112, 118 (Ind. Ct. App. 2005) (permitting mother of stillborn child to pursue separate action for negligent infliction of emotional distress while prohibiting action for wrongful death of unborn child), *trans. not sought*; <u>Breece v. Lugo</u>, 800 N.E.2d 224, 229–30 (Ind. Ct. App. 2003) (holding that <u>Bolin</u> does not prohibit a mother from pursuing an action for the negligent infliction of emotional distress related to the *in utero* death of her unborn child), *reh'g denied*, *trans. denied*; *see also* <u>Ind. Patient's Comp. Fund v. Winkle</u>, 863 N.E.2d 1, 9 (Ind. Ct. App. 2007) (noting that parents "may recover all emotional damages that were suffered as a result of

4

the miscarriage" but holding that such damages are limited to the mother's damage cap under the MMA), *trans. denied*. We agree with the Court of Appeals' reading of Bolin.

On transfer, Bechtel and the Center argue that their position is supported by our recent decision in Ind. Patient's Comp. Fund v. Patrick, 929 N.E.2d 190 (Ind. 2010), which was issued by this Court after the decision of the Court of Appeals in the present case. Appellees Bechtel's and the Center's Transfer Br. at 5–7. Patrick was a medical malpractice action seeking damages under Indiana's Adult Wrongful Death Act ("the AWDA") for the death of the plaintiff's 31-year-old son resulting from alleged medical negligence in the treatment of his son's injuries. 929 N.E.2d at 190–91. Bechtel and the Center assert that Patrick held that, because the father's emotional distress claims arose out of the death of his adult son, his claims were necessarily governed by but not permitted under the AWDA. Appellees Bechtel's and the Center's Transfer Br. at 5. They contend that the CWDA should be similarly interpreted to be the exclusive vehicle for recovering damages following the death of a child, and that, since Bolin prohibits an action for the death of an unborn child under the CWDA, the child's parents should likewise be barred from pursuing separate claims for emotional distress. *Id.* at 7. We disagree.

Patrick does not stand for the proposition urged by Bechtel and the Center. The issue presented in Patrick was whether the MMA provided an *alternative* possibility for recovering emotional distress damages as a derivative claim under the MMA, *assuming* that emotional distress damages were precluded under the AWDA. The plaintiff's action in Patrick was brought under the AWDA, not as a separate claim for negligent infliction of emotional distress. We stated: "Though Father recognizes that he does not have a claim for emotional distress under the [AWDA], and he is correct to do so, he contends that he was entitled to bring a claim for his own emotional distress under the MMA." 929 N.E.2d at 192. The issue of whether the AWDA might preclude emotional distress damages claims related to the death of a covered adult was conceded by the plaintiff in Patrick. Our "correct to do so" observation was nothing more than a comment particular to the facts and issues in the Patrick case and was not a statement of law applicable in all situations. Of particular significance to the present case is the fact that Patrick concluded with an express recognition that the MMA would allow those claims "for which damages for emotional distress are available" and cited Ryan and Breece (stillbirth cases noted above) among

5

such cases that permitted damage claims for emotional distress. *Id.* at 194. This implicit approval of Ryan and Breece is instructive. Thus, Patrick does not preclude the possibility of a separate claim, outside the wrongful death statutes, for negligent infliction of emotional distress by a parent suffering a miscarriage or full-term stillbirth.

We hold that parents who have suffered a stillbirth of their child are not precluded by the CWDA from seeking emotional distress damages in a negligence action.

## B. Claims for Emotional Distress Damages in Negligence Actions

Apart from the CWDA, the trial court's summary judgment for Bechtel and the Center was also based on the court's belief that the plaintiffs may not bring an action for the tort of negligent infliction of emotional distress because the evidence failed to establish (a) that the alleged emotional distress was caused by negligently-inflicted injuries on another and (b) that either plaintiff sustained a direct impact or had sufficient "direct involvement" with the injury-causing event. Findings of Fact, Conclusions of Law and Judgment, Appellants' App'x at 21, 23. The trial court's ruling is based upon its understanding of our decision in Shuamber v. Henderson, 579 N.E.2d 452 (Ind. 1991) and its progeny. Findings of Fact, Conclusions of Law and Judgment, Appellants' App'x at 21.

Actions for emotional distress were originally limited by the impact rule, which required: "(1) an impact on the plaintiff; (2) that causes physical injury to the plaintiff; (3) that in turn causes the emotional distress." Alexander v. Scheid, 726 N.E.2d 272, 283 (Ind. 2000) (explaining the genesis of the impact rule). This Court adhered to the impact rule for many years in part because of a concern that, if recovery for emotional injuries unrelated to physical injuries were allowed, the courts would be inundated with potentially fraudulent emotional distress claims. Shuamber, 579 N.E.2d at 455. At the heart of the resistance to such claims was a belief that "absent physical injury, mental anguish is speculative, subject to exaggeration, likely to lead to fictitious claims, and often so unforeseeable that there is no rational basis for awarding damages." Cullison v. Medley, 570 N.E.2d 27, 29 (Ind. 1991). In Shuamber, the plaintiffs, a mother and her daughter, were involved in an automobile accident which resulted in the death of another pas-

6

senger in their vehicle, their son/brother. 579 N.E.2d at 453. Both mother and sister brought an action for damages against the other driver for emotional distress resulting from the loss of their son/brother, and not for emotional distress resulting from their own injuries sustained in the accident. *Id.* Under the impact rule, such actions would have been barred because the rule only allowed recovery of emotional damages caused by the *plaintiff's* physical injuries. *Id.* at 454. Because we concluded that "the rationale for [the impact rule], whatever its historical foundation, is no longer valid," *id.* at 455 (quoting Cullison, 570 N.E.2d at 30), we relaxed the requirements of the impact rule. We held that claims for emotional damages could be brought by a plaintiff who "sustains a direct impact by the negligence of another and, by virtue of that direct involvement[,] sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person." *Id.* at 456. Thus, we eliminated the second element of the traditional impact rule—the requirement of a physical injury to the plaintiff—in favor of broader recovery for emotional damages. This revised rule is generally referred to as the modified impact rule. Condor v. Wood, 716 N.E.2d 432, 434 (Ind. 1999).

We clarified the modified impact rule in Condor where we held that an impact need not rise to the level of a physical injury. 716 N.E.2d at 434. The plaintiff in that case brought an action to recover emotional damages suffered when the plaintiff witnessed a coworker, who was walking next to the plaintiff, being struck and killed by a passing truck. *Id.* at 433. As the truck was running over her coworker, the plaintiff pounded on the side of the truck as it passed to catch the attention of the driver. *Id.* We found the impact requirement satisfied by the plaintiff's pounding, *id.* at 435, noting that an impact need not be initiated by the tortfeasor. *Id.* at n.3. This Court explained: "The modified impact rule maintains the requirement of a direct physical impact. However, the impact need not cause a physical injury to the plaintiff and the emotional trauma suffered by the plaintiff need not result from a physical injury caused by the impact." *Id.* at 434. We held that "'direct impact' is properly understood as the requisite measure of 'direct involvement' in the incident giving rise to the emotional trauma." *Id.* at 435. In Ross v. Cheema, a companion case announced the same day as Condor, we emphasized that, even though the modified impact rule removed the physical injury requirement, "direct impact is properly understood as being 'physical' in nature." 716 N.E.2d 435, 437 (Ind. 1999) (holding that the plaintiff did not sustain a sufficient impact by hearing a loud and frightening knocking at the door to her

7

residence).

We further expanded recovery for emotional injuries in Groves v. Taylor to include certain closely related bystanders to negligent conduct. 729 N.E.2d 569, 573 (Ind. 2000). There, we allowed a claim for emotional distress damages sustained by an eight-year-old plaintiff who "heard the loud 'pop' of a vehicle fatally striking her [six-year-old] brother and turned to observe his body as it rolled off the highway." *Id.* at 571. Reviewing the Shuamber rule and its progeny, we observed:

> [T]he reason for requiring direct involvement is to be able to distinguish legitimate claims of the emotional trauma from the mere spurious. The value of requiring "direct impact" is that it provides clear and unambiguous evidence that the plaintiff was so directly involved in the incident giving rise to the emotional trauma that it is unlikely that the claim is merely spurious.
>
> Given that the prevention of merely spurious claims is the rationale for the Shuamber rule, logic dictates that there may well be circumstances where, while the plaintiff does not sustain a direct impact, the plaintiff is sufficiently directly involved in the incident giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious.

*Id.* at 572. Applying this analysis more precisely to claims by bystanders, we held:

> [W]here the direct impact test is not met, a bystander may nevertheless establish "direct involvement" by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct.

*Id.* at 573. Finding that the injury suffered by the plaintiff's brother was fatal and that the plaintiff witnessed her brother's body rolling off the highway, we vacated summary judgment and permitted the plaintiff's action for emotional distress to continue. *Id.* at 573. Thus, "in order to recover damages for the negligent infliction [of] emotional distress, a plaintiff must satisfy either the modified impact rule or the bystander rule." Atl. Coast Airlines v. Cook, 857 N.E.2d 989, 998 (Ind. 2006).[4]

---

[4] Since our adoption of the "bystander rule" in Groves, our colleagues on the Court of Appeals have urged us on multiple occasions to abandon the modified impact and bystander rules altogether in favor of a general test of "direct involvement." *See, e.g.*, Delta Airlines v. Cook, 821 N.E.2d 400, 401 (Ind. Ct. App. 2005) ("We think that [the] reasoning [underlying the Shuamber decision] also supports eliminating the physical impact requirement under the modified impact rule."), *vacated by* Atl. Coast Airlines v. Cook, 857 N.E.2d 989 (Ind. 2006); Ketchmark v. N. Ind. Pub. Serv. Co., 818 N.E.2d 522, 526 (Ind. Ct. App. 2004) (Crone, J., dissenting) ("[T]he time has come to clear the decks of the so-called

8

The right to seek damages for emotional distress in actions for negligence often referred to as actions for negligent infliction of emotional distress, is carefully circumscribed under Indiana jurisprudence. We have never permitted, nor do we today, an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another. Such independent, stand-alone actions for negligent infliction of emotional distress are not cognizable in Indiana. *See* Cook, 857 N.E.2d at 998. But actions seeking damages for emotional distress resulting from the negligence of another are permitted in two situations: where the plaintiff has (1) witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives (i.e., the bystander rule, Groves, 729 N.E.2d at 573) or (2) suffered a direct impact (i.e., the modified impact rule, Shuamber, 579 N.E.2d at 456). Cook, 857 N.E.2d at 998. Under the bystander rule, the death/severe injury must have been proximately caused by the defendant's breach of some cognizable legal duty owed by the defendant *to the relative* at issue. Groves, 729 N.E.2d at 573. The modified impact rule is similar, though it arises in two different situations. In the first scenario, the plaintiff is the person to whom the defendant owes a legal duty. *See, e.g.*, Alexander, 726 N.E.2d at 273–74. In that case, the direct impact must have

'impact rule' and to allow the tort of negligent infliction of emotional distress to stand on its own inherent elements."), *trans. not sought*; Keim v. Potter, 783 N.E.2d 731, 735 (Ind. Ct. App. 2003) (holding that plaintiff mistakenly diagnosed with hepatitis C could maintain an action for negligent infliction of emotional distress because the plaintiff was "sufficiently 'directly involved' to satisfy the modified impact rule" despite the lack of any finding that the plaintiff had sustained a direct physical impact), *trans. not sought*; Blackwell v. Dykes Funeral Homes, Inc., 771 N.E.2d 692, 697 (Ind. Ct. App. 2002) (holding that the plaintiffs could maintain an action for emotional distress against a funeral home that mishandled the remains of the plaintiffs' child even though "no physical impact occurred" because "the alleged mental anguish . . . is not likely speculative, exaggerated, fictitious, or unforeseeable"), *trans. denied.* A "direct involvement" standard is likely to encounter the same problems as those faced by one testing the genuineness and foreseeability of alleged emotional distress, which has been utilized by other states. We think California's experience with such a standard for bystander claims is instructive: twenty-one years after adopting foreseeability as the test for determining when a claim of emotional distress should be allowed, the California Supreme Court made "an important course correction" and adopted three mandatory requirements that must be satisfied to bring a bystander claim for emotional distress. Bird v. Saenz, 51 P.3d 324, 327 (Cal. 2002) (describing the evolution of California's law on liability for negligent infliction of emotional distress). The change in course was motivated by the "arbitrary and conflicting results and 'ever widening circles of liability'" produced by the foreseeability standard. *Id.* Many other states have acknowledged the unworkable nature of a foreseeability rule as well. Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 47f cmt. f (Tentative Draft No. 5, 2007). A pure foreseeability rule is "unsatisfactory because genuine emotional disturbance can occur and is foreseeable in many situations in which courts clearly would not permit recovery." *Id.* § 47f. A general standard of "direct involvement" would not be any more precise. We have found no other comprehensive uniform principle capable of satisfactorily reflecting the range of circumstances where liability for emotional distress is appropriate.

been proximately caused by the defendant's breach of a legal duty *to the plaintiff*. *Id.* at 284. In the second scenario, the defendant owes a legal duty to a third-party. *See, e.g.*, Condor, 716 N.E.2d at 433; Shuamber, 579 N.E.2d at 453. In that case, the direct impact (to the plaintiff) must have been proximately caused by the defendant's breach of a legal duty *to the third-party*. Condor, 716 N.E.2d at 435; Shuamber, 579 N.E.2d at 456. Thus, under any of the three scenarios, the defendant's negligence in breaching a legal duty is a required predicate.[5]

In the present case, the trial court granted summary judgment for Bechtel and the Center in part concluding that the plaintiffs' actions for negligent infliction of emotional distress are precluded due to the absence of any negligently-inflicted injuries on another. This ruling raises two issues.

First, as to the trial court's contention that the modified impact rule limits a plaintiff's recovery of emotional damages to situations where an injury was negligently-inflicted *on another* person, we do not agree. It is correct that a plaintiff, to recover emotional damages under the *bystander rule*, must prove that another person suffered a negligently-inflicted "death or severe injury." *See* Groves, 729 N.E.2d at 573 (holding that a bystander may only recover for negligent infliction of emotional distress if the bystander witnessed or came to the scene soon after the "death or severe injury of a loved one [(injury to another)] . . . caused by the defendant's negligent or otherwise tortious conduct [(negligently-inflicted)]"). In contrast, however, the same is not required for emotional distress claims brought under the *modified impact rule*, where we have permitted recovery so long as the plaintiff personally sustained a physical impact, in addition to emotional distress damages. *See* Bader v. Johnson, 732 N.E.2d 1212, 1215, 1222 (Ind. 2000) (holding that plaintiff-mother could assert a claim for negligent infliction of emotional dis-

---

[5] The Court of Appeals has characterized negligent infliction of emotional distress as an "independent" tort on several occasions. *E.g.*, K.D. v. Chambers, 951 N.E.2d 855, 862 (Ind. Ct. App. 2011) ("Negligent infliction of emotional distress is an independent tort and not merely an element of damages."), *trans. denied*; Baumgart ex re. Baumgart v. DeFries, 888 N.E.2d 199, 208 (Ind. Ct. App. 2008) (recognizing negligent infliction of emotional distress as an "independent" tort), *trans. denied*; Ind. Patient's Comp. Fund v. Winkle, 863 N.E.2d 1, 6 (Ind. Ct. App. 2007) ("As claims of negligent infliction of emotional distress no longer require an underlying physical injury or even a physical impact, we have held on numerous recent occasions that it is an independent tort."), *trans. denied*; Clancy v. Goad, 858 N.E.2d 653, 661 n.5 (Ind. Ct. App. 2006) (recognizing negligent infliction of emotional distress as an "independent" tort), *trans. denied*. To the extent that these cases are inconsistent with today's opinion, we disapprove them.

tress where the only injury was the mother's lost "opportunity to terminate the pregnancy" caused by her doctor's "failure to inform" her of a potential birth defect in the child); Alexander, 726 N.E.2d at 283–84 (holding that the plaintiff could seek damages for negligent infliction of emotional distress against a doctor, who failed to diagnose lung cancer during a routine x-ray, despite the fact that the *plaintiff* was the only person who had suffered an injury); *see also* Ross, 716 N.E.2d at 437 (dismissing plaintiff's claim for negligent infliction of emotional distress because the plaintiff "did not sustain the direct 'physical' impact necessary" and not because the plaintiff was the only person who could have potentially sustained a negligently-inflicted injury). An action seeking emotional distress damages, if predicated not on the bystander rule but on the modified impact rule, does not require the negligent infliction of injury on a person other than the plaintiff. This application of the direct impact requirement, consistent with Condor, serves to sift legitimate claims of emotional harm from the spurious. 716 N.E.2d at 435; *see also* Groves, 729 N.E.2d at 572 ("The value of requiring 'direct impact' is that it provides clear and unambiguous evidence that the plaintiff was so directly involved in the incident giving rise to the emotional trauma that it is unlikely that the claim is merely spurious."). This purpose does not necessitate limiting recovery for emotional damages only to circumstances where someone other than the plaintiff has suffered a negligently-inflicted injury.

Second, we also disagree with the trial court's conclusion that the plaintiffs cannot identify any *negligently-inflicted injuries*. Here the plaintiffs' child died *in utero* as a result of the allegedly negligent care provided by the defendants during Brown's labor. Negligence consists of (1) a duty owed by the tortfeasor to the tort victim, (2) a breach of that duty, and (3) an injury to the tort victim proximately caused by the breach. Estate of Mintz v. Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 998–99 (Ind. 2009). Individuals including health care providers owe unborn children a duty of care. Walker v. Rinck, 604 N.E.2d 591, 595 (Ind. 1992); Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 636–37 (Ind. 1991); *see also* Restatement (Second) of Torts § 869 (1977) ("One who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive."); W. Prosser & W. Keeton, *The Law of Torts* § 41 at 368 (5th ed. 1984) ("The child, if he is born alive, is now permitted in every jurisdiction to maintain an action for the consequences of prenatal injuries . . . ."). As to breach and causation, the plaintiffs have alleged that the obstetrical care provided by Bechtel, the Center, and the Hospital fell below the

11

relevant standard of care and that this breach proximately caused the death of their child *in utero*. Appellants' App'x at 31. The only arguable support for the trial court's finding a lack of negligently-inflicted injury that we can perceive is that, as noted above in Part 1-A, the injuries to the plaintiffs' child were not actionable either at common law or under the Child Wrongful Death Statute in effect at the time of the death. Yet, this does not alter the undeniable fact that the death of an unborn child *is* an injury to the child. It simply means the injury is not one for which the unborn-child-victim can seek recovery; such an injury, however, is enough to support a claim for negligent infliction of emotional distress.

It was thus incorrect to grant summary judgment in favor of Bechtel and the Center. The plaintiffs are not precluded from maintaining an action seeking emotional distress damages under the bystander rule.[6] Our conclusion is unchanged by the fact, relied on by the trial court, that for purposes of the CWDA a stillborn infant is not a child. Findings of Fact, Conclusions of Law and Judgment, Appellants' App'x at 23–24. As we discussed above in Part 1-A, the CWDA's provisions do not limit the availability of other remedies for emotional damages related to the death of a child. The CWDA's provisions are limited to wrongful death actions. Thus, the CWDA's definition of "child" is limited to the context of wrongful death actions, and the CWDA does not define what it means to be a child in all contexts. So long as the plaintiffs can satisfy

---

[6] Some states have resolved this issue by recognizing a distinct tort for the recovery of emotional damages resulting from a negligently caused stillbirth. *E.g.*, Burgess v. Superior Court, 831 P.2d 1197, 1203, 1209 (Cal. 1992) ("For the reasons set forth herein, we hold that Burgess is not required to satisfy the criteria for recovery as a bystander and may state a claim for damages for serious emotional distress arising from the negligent delivery of her child."); Tanner v. Hartog, 696 So.2d 705, 708 (Fla. 1997) ("As a natural evolution of the common law, we conclude . . . that public policy dictates that an action by the parents for negligent stillbirth should be recognized in Florida."); McClain v. Univ. of Mich. Bd. of Regents, 665 N.W.2d 484, 486 (Mich. Ct. App. 2003) ("[P]laintiff's cause of action for damages in her own right as a result of her miscarriage is well grounded in Michigan law . . . ."); Giardina v. Bennett, 545 A.2d 139, 143 (N.J. 1988) ("We are satisfied that our common law has evolved to a point that would recognize a valid cause of action for the emotional injuries suffered by parents in this kind of a case."); Broadnax v. Gonzalez, 809 N.E.2d 645, 649 (N.Y. 2004) ("We therefore hold that, even in the absence of an independent injury, medical malpractice resulting in miscarriage or stillbirth should be construed as a violation of a duty of care to the expectant mother, entitling her to damages for emotional distress."); Phelps v. Physicians Ins. Co. of Wis., Inc., 768 N.W.2d 615, 624 (Wis. 2009) ("Specifically, a mother in childbirth suffers injuries as a participant or victim of the medical malpractice, and her injuries are distinct from witnessing the injury to and death of her child. As a result, a mother can pursue a separate claim for medical malpractice." (citation omitted)). We believe Indiana jurisprudence is better served by application of the modified impact and bystander rules than by creation of a new tort.

the other requirements of the bystander rule, they may proceed with their actions seeking emotional distress damages.[7]

## 2. Summary Judgment Motion of the Hospital

In support of its motion for summary judgment, the hospital has presented three contentions to the trial court. First, it asserts: (a) because neither of the parents suffered physical injury and their claim is only for emotional injuries, such claim may only be asserted under the Indiana Medical Malpractice Act as one derivative of an injury to a patient covered by the MMA; (b) an unborn child is not a "patient" under the MMA; and (c) the parents thus may not bring any such derivative medical malpractice action under the MMA. Appellants' App'x at 354–60. Second, the hospital alleges that it was neither liable for any failures in the manner in which Bechtel was supervised nor vicariously liable for her actions. *Id.* at 360–61. And third, the hospital asserts that the plaintiffs' negligent credentialing claim is barred because such claim was not specifically submitted to a medical review panel under the MMA. *Id.* at 361.

The trial court granted the hospital's motion for summary judgment on a single basis, finding "there is no material issue of fact that the Plaintiffs' claim for wrongful death of a fetus is precluded by Indiana law." Appellants' App'x at 26. The ruling did not otherwise address the hospital's summary judgment claims regarding supervisory or vicarious liability or whether the medical review panel considered the negligent credentialing claim. We thus understand the trial court to have concluded that all of the plaintiffs' theories of liability against the hospital were foreclosed only because the court concluded that the MMA generally does not allow actions for emotional injuries to parents resulting from the *in utero* death of their child because such a child is not a "patient" under the MMA. The hospital makes no claim on appeal that the trial court's ruling was a separate adjudication of the hospital's assertions regarding supervisory or vicarious liability or the panel's review of the negligent credentialing claim. As to the hospital, the sole issue on appeal is thus whether an emotional distress claim may be brought under the Medical Malpractice Act by parents alleging that the stillbirth of their child was caused by medical negli-

---

[7] Because we hold that the plaintiffs are not precluded from pursuing their emotional distress claims under the bystander rule, we need not address whether either plaintiff also suffered a direct impact sufficient to satisfy the modified impact rule.

gence.

As to this issue, the hospital argues that the plaintiffs' claims for negligent infliction of emotional distress are "derivative" of the injuries sustained by the unborn child, that a fetus not born alive should not be considered a "patient" under the MMA, and that the plaintiffs' claims are thus barred under the MMA because "there must be a patient from whom such a claim must derive." Appellee Hospital's Br. at 9–10.

The MMA "does not create new causes of action that otherwise do not exist." Patrick, 929 N.E.2d at 194. The MMA simply requires that "claims for medical malpractice that are otherwise recognized under tort law and applicable statutes be pursued through the procedures of the MMA." Chamberlain v. Walpole, 822 N.E.2d 959, 963 (Ind. 2005). In both Patrick and Chamberlain, we held that the MMA is procedural only and does not create new causes of action. 929 N.E.2d at 193–94; 822 N.E.2d at 963. As noted above in Part 1-A, Patrick explicitly includes a "final observation" made for "the sake of clarity":

> [W]ere the claim underlying the MMA action one for which damages for emotional distress are available, the MMA does not preclude derivative claims of emotional distress by persons whom the law refers to as "bystanders." Indeed, as Chamberlain makes clear, the MMA requires any "derivative claim" to be included as part of the MMA action, making it subject to the MMA's procedural and substantive requirements. *Id.* Several cases have made explicit reference to the availability of damages for emotional distress in MMA cases. *See, e.g.*, Bader v. Johnson, 732 N.E.2d 1212[, 1222] (Ind. 2000) [(regarding emotional distress claim, holding that mother's "continued pregnancy and the physical transformation her body underwent as a result, satisfy the direct impact requirement of our modified impact rule")]; Baumgart ex rel. Baumgart v. DeFries, 888 N.E.2d 199 (Ind. Ct. App. 2008) [(holding that mother's MMA emotional distress claim not entitled to separate statutory damage cap)], *trans. denied*; Ryan v. Brown, 827 N.E.2d 112 (Ind. Ct. App. 2005) [(allowing mother's MMA claim for negligent infliction of emotional distress arising from miscarriage)]; and Breece v. Lugo, 800 N.E.2d 224 (Ind. Ct. App. 2003) [(permitting MMA emotional distress claim from stillbirth)], *trans. denied*.

929 N.E.2d at 194. It is clear, therefore, that Patrick does not preclude the possibility of a separate claim outside the wrongful death statutes for negligent infliction of emotional distress by a parent suffering a miscarriage or full-term stillbirth.

The hospital also argues that its position is supported by Ind. Patient's Comp. Fund v. Winkle, 863 N.E.2d 1 (Ind. Ct. App. 2007), *trans. denied*. Appellee Hospital's Br. at 15. The

14

hospital contends that <u>Winkle</u> "stands for the principle" that parents such as the plaintiffs here "are barred from pursuit of derivative claims arising from their stillborn fetus's death because a stillborn fetus is not a patient under the [MMA]." *Id.* at 12.

In <u>Winkle</u>, decided three years before our opinion in <u>Patrick</u>, the Court of Appeals confronted a medical malpractice action in which the mother developed a severe nutritional deficiency disorder during her pregnancy that resulted in a miscarriage at seventeen weeks. 863 N.E.2d at 3. The trial court awarded separate damages for each of three alleged separate injuries: (a) the mother's Wernicke's encephalopathy, a degenerative brain disorder caused by lack of thiamine; (b) the mother's emotional distress due to the loss of the child; and (c) the father's emotional distress due to the loss of the child. *Id.* at 4. On appeal, the Fund conceded that the parents may seek damages under the MMA for their emotional distress under the impact test and bystander rule but contended that all the parents' claims were subject to the single statutory damage cap applicable to the mother. *Id.* at 5. The primary issue in <u>Winkle</u> was whether the MMA provided three separate caps—one for the mother's direct injury and two others for the mother's and the father's claims for negligent infliction of emotional distress for the death of their child. The court interpreted the damage cap language of the MMA, Ind. Code § 34-18-14-3(a), to require the emotional damages sought in all three actions be recovered under a single statutory cap. The court declared, "In their negligent infliction of emotional distress claims, [the parents] may recover all emotional damages that were suffered as a result of the miscarriage; however, those emotional damages must be recovered under the single statutory cap allotted to [the mother]." 863 N.E.2d at 9.

To determine whether the plaintiffs' claims were controlled by a single or multiple caps under the MMA, the Winkle court examined the MMA damage cap provision that states, "The total amount recoverable for an injury or death of a *patient* may not exceed the following . . . ." Ind. Code § 34-18-14-3(a) (emphasis added). The word "patient" is defined in the MMA as follows:

> "Patient" means an *individual* who receives or should have received health care from a health care provider, under a contract, express or implied, and *includes a person having a claim of any kind*, *whether derivative <u>or otherwise</u>*, *as a result of alleged malpractice on the part of a health care provider*. Derivative claims include the claim of a parent or par-

15

ents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, *and other similar claims*.

Winkle, 863 N.E.2d at 6 (some emphasis added) (quoting Ind. Code § 34-18-2-22). While opining that the negligent infliction of emotional distress is an "independent tort," the court believed that the parents' claims for negligent infliction of emotional distress, "suffered because of their unborn child's death," when made under the MMA, nevertheless "constitute 'derivative claims' as defined in Indiana Code section 34-18-2-22[, the MMA's definition of 'patient']." *Id.* at 6–8. Believing that as "derivative" claims, they had to derive from a separate cognizable claim of the actual victim of the malpractice (here, the unborn child), the Winkle court then imported into the MMA the rationale of Bolin excluding from the Child Wrongful Death Act claims for the death of a child not born alive. *Id.* at 8–9. The court concluded: "Because the Winkles' unborn child is not a 'patient' pursuant to the [MMA] and because [they] therefore have no one from whom their negligent infliction of emotional distress claims can derive, they are not entitled to separate statutory caps for the emotional damages." *Id.* at 11. The hospital urges application of this rationale in the present case. Because claims for negligent infliction of emotional distress need not be viewed as "derivative claims," we disagree.

As discussed above in Part 1-B, Indiana law recognizes that parents may seek damages for emotional distress in negligence actions either under the modified impact rule if plaintiff suffered physical injury or under the bystander rule. Such claims, however, are not necessarily "derivative" actions seeking damages associated with the personal injury or wrongful death of another, such as direct pecuniary losses (e.g., medical costs, funeral expenses, and loss of income) or non-pecuniary losses (e.g., loss of consortium, loss of love and affection, etc.). Rather, such claims of emotional distress represent injuries *directly* inflicted on a plaintiff and are not derivative in the traditional sense. The definition of "patient" is much broader than the "and other similar claims" language included in the description of derivative claims relied on by the Winkle court. The definition begins by providing that "patient" includes "a person having a *claim of any kind*, whether derivative *or otherwise*, as a result of alleged malpractice on the part of a health care provider." Ind. Code § 34-18-2-22 (emphasis added). It is this language that assures the expansive applicability of the MMA—including the damage cap provision—to a variety of actions alleging medical negligence. Claims for negligent infliction of emotional distress, if arising

16

from alleged medical malpractice, are subject to the MMA not because they are derivative but because they are *"otherwise" a result of alleged malpractice*. We do not read <u>Winkle</u> to preclude the plaintiffs' MMA actions for negligent infliction of emotional distress from the stillbirth of their child. Thus a parent who suffers emotional distress from experiencing the birth of a lifeless child resulting from medical negligence is a "patient" subject to the MMA, but such claims need not be seen as "derivative" ones.[8] Without the "derivative" claim rationale, it was unnecessary for the Winkle court to opine that the CWDA's treatment of unborn children should be imported into the MMA. The scope of "patient" under the MMA does not turn on whether the CWDA extends to unborn children.

Accordingly, we reject the hospital's summary judgment request that the plaintiffs' be precluded from asserting MMA claims for negligent infliction of emotional distress because their unborn child should not be considered a "patient" under the MMA. To the contrary, the parents' claims for emotional distress damages from experiencing the stillbirth of their child as a result of alleged medical malpractice are separate valid actions. Acknowledging that the hospital provided medical care to both the unborn child and the mother, the plaintiffs do not dispute that their action against the hospital is governed by the MMA. The plaintiffs' actions seeking damages for emotional distress resulting from alleged medical negligence are not precluded under the MMA.

### 3. Conclusion

The judgment of the trial court granting summary judgment in favor of Barbara Bechtel, Expectations Women's Health and Childbearing Center, and St. Vincent Randolph Hospital is reversed. This cause is remanded for further proceedings.

Shepard, C.J., and Sullivan, Rucker, and David, JJ., concur.

---

[8] We note, however, as did the <u>Winkle</u> court, that the MMA "applies the damages cap to all claims, whoever may assert them, for a single 'injury or death of a patient.'" 863 N.E.2d at 10 (quoting <u>Goleski v. Fritz</u>, 768 N.E.2d 889, 891 n.1 (Ind. 2002) (quoting Ind. Code § 34-18-14-3(a)). Therefore, had the <u>Winkle</u> court permitted the plaintiffs in that case to recover separate emotional damages related to the stillbirth of their child, the parents would nevertheless have only been entitled to one damage cap under the MMA for all such emotional distress damages.